UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
KATE GORBATY,

                                Plaintiff,                                  MEMORANDUM
                                                                       AND ORDER
              -against-                                                       CV-10-3291 (NGG)

WELLS FARGO BANK, N.A., WELLS FARGO
HOME MORTGAGE, INC., and WELLS FARGO
HOME EQUITY,

                                Defendants.
------------------------------------------------------------X
GOLD, S., U.S.M.J.:

## INTRODUCTION

      Kate Gorbaty originally filed her complaint *pro se* on July 16, 2010, bringing claims arising from two loans made with defendants Wells Fargo.[1] I held an initial conference on November 5, 2010. Plaintiff's husband, an attorney named Dmitry Gorbaty, appeared at the conference and indicated that he intended to represent his wife in this action. The minute entry for the conference states that "Mr. Gorbaty is encouraged to review Rule 3.7 of the New York Rules of Professional Conduct before deciding whether to enter a notice of appearance in this case." On November 19, 2010, Mr. Gorbaty filed a notice of appearance as counsel for plaintiff.

---

[1] Plaintiff actually filed two actions: the instant one and Docket 10-CV-3354, filed eight days after the first. The defendants in both actions are the same. The first action alleges violations concerning plaintiff's home mortgage loan, whereas the second concerns a home equity loan taken out at the same time. By Order dated July 27, 2010, the Honorable Nicholas G. Garaufis consolidated the two actions. Docket Entry 3.

Docket Entry 23. Defendants now move to disqualify Mr. Gorbaty from representing plaintiff in this action, arguing that he is a critical fact witness.[2]

BACKGROUND

Plaintiff alleges that she is a victim of defendants' "abusive and predatory" loan practices. Compl. ¶ 5. Plaintiff applied for and obtained a mortgage loan for $276,000 and a home equity loan for $69,000, both from Wells Fargo, in connection with her purchase of a home in New Jersey in 2007. Among other claims, plaintiff asserts that defendants violated the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq.*, and the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.,* by failing to make certain disclosures in connection with the processing of her applications and the closing on her loans on July 23, 2007. Compl. ¶¶ 7-16. In late 2009 and early 2010, plaintiff repeatedly applied to Wells Fargo for a loan modification pursuant to the Home Affordable Modification Program, but Wells Fargo rejected each of her applications. Compl. ¶¶ 21-26. Plaintiff then filed the instant action.

Defendants contend that plaintiff's husband, Dmitry Gorbaty, was a co-borrower on both the mortgage and home equity loans, that he will as a result be an important witness in this case, and that he therefore should not be permitted to serve as counsel. Plaintiff responds that she is the sole borrower and that she will suffer substantial hardship if she is not permitted to have her husband serve as her attorney in this lawsuit.

---

[2] Plaintiff contends that defendants' motion should be decided by Judge Garaufis because the motion and case have never been referred to me. Plaintiff's contention is incorrect. All civil cases filed in the Eastern District of New York are referred to magistrate judges for all non-dispositive pre-trial matters upon filing. Local Civil Rule 72.2. Moreover, a magistrate judge may decide non-dispositive motions, such as disqualification motions, pursuant to 28 U.S.C. § 636(b)(1)(A). Thus, the "clearly erroneous or contrary to law" standard set forth in Federal Rule of Civil Procedure 72(a) governs any objections to my ruling.

DISCUSSION

"Disqualification is viewed 'with disfavor in this Circuit,'" and courts thus require a "'high standard of proof'" before granting a disqualification motion. *Finkel v. Frattarelli Bros., Inc.*, __ F. Supp. 2d __, 2010 WL 3724373, at *1 (E.D.N.Y. Sept. 15, 2010) (citations omitted). Nonetheless, disqualification of a party's counsel is "appropriate where allowing the representation to continue would pose a 'significant risk of trial taint.'" *Id.* at *2 (quoting *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981)).

In determining whether disqualification is proper, the Second Circuit looks to the standards for attorneys set forth in New York's Rules of Professional Conduct, N.Y. COMP. CODES R. & REGS. tit. 22, § 1200.0. *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009). Defendants here contend that disqualification is proper under New York's witness-advocate rule, Rule 3.7(a) of the New York Rules of Professional Conduct. This Rule provides that a lawyer "shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact," unless one of five exceptions is met.[3] N.Y. COMP. CODES R. & REGS. tit. 22, § 1200.0. When deciding a disqualification motion, a court should consider the necessity and weight of the attorney's purported testimony, taking into account the significance of the issue with respect to which the attorney is a witness and the availability of other evidence of the same facts. *S&S Hotel Ventures Ltd. Partnership v. 777 S.H. Corp.*, 69 N.Y.2d 437, 446 (1987).

---

[3] The ABA model rule is similar to the New York Rule. *Gabayzadeh v. Taylor*, 639 F. Supp. 2d 298, 303 n.6 (E.D.N.Y. 2009). "Model Rule 3.7(a) . . . provides that '[a] lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness.'" *Id*.

3

The Second Circuit has identified the risks to the integrity of the judicial system posed when an attorney is likely to be a witness:

> (1) the lawyer might appear to vouch for his own credibility; (2) the lawyer's testimony might place opposing counsel in a difficult position when she has to cross-examine her lawyer-adversary and attempt to impeach his credibility; (3) some may fear that the testifying attorney is distorting the truth as a result of bias in favor of his client; and (4) when an individual assumes the role of advocate and witness both, the line between argument and evidence may be blurred, and the jury confused.

*Murray*, 583 at 178. Despite these risks, motions under the witness-advocate rule are subject to strict scrutiny so as to guard against their tactical use. *Id.* Any doubts, though, should be resolved in favor of disqualification. *Gabayzadeh v. Taylor*, 639 F. Supp. 2d 298, 301 (E.D.N.Y. 2009).

Defendants' motion is based on their contention that Mr. Gorbaty is an important witness because he is a co-borrower on the loans in dispute and was present at the closing on the loans. Defendants argue that Mr. Gorbaty, who owns the house securing the loans with his wife, may even be a necessary party pursuant to Federal Rule of Civil Procedure 19(a).

Plaintiff contends that she is the sole borrower and that Mr. Gorbaty is therefore not a necessary party or critical witness. The documents submitted by the parties, however, indicate otherwise. First, the mortgage documents identify both Kate and Dmitry Gorbaty as borrowers. Docket Entry 26-2 at 1-17, 20, 32, 33.[4] Moreover, it appears from documents submitted by the defendants that both Dmitry and Kate Gorbaty signed the applications for the loans at issue. Docket Entry 26-1. It further appears that both plaintiff and her husband, on the closing date,

---

[4] There are also indications in the documents that Dmitry Gorbaty was *not* a borrower. Docket Entry 26-2 at 18; Compl. Exs. B, D, Docket Entry 1 at 29, 35.

signed the mortgages securing the loans and the HUD-1 settlement statements and Truth-in-Lending disclosures presented at the closing.  Docket Entries 26-2, 26-3, and 26-4.

The indication in these documents that Mr. Gorbaty applied for the loans at issue as a borrower and signed the challenged mortgages suggests that he may well be a necessary party because relief with respect to those mortgages is sought.  The indication that Mr. Gorbaty signed the HUD-1 and TILA forms, apparently on the closing date, is particularly significant to the likelihood that he will be an important witness in light of the fact that plaintiff denies having seen or signed these documents at the closing.  Compl. ¶¶ 10, 13.  Mr. Gorbaty is thus in a position to corroborate or refute plaintiff's claim that she did not sign documents at the closing despite the fact that those documents appear to have her dated signature on them.  It is therefore not surprising that defendants intend to take Mr. Gorbaty's deposition.  Def. Mem. at 6.  Indeed, Mr. Gorbaty himself acknowledges that he has "knowledge about the nuances of the case," Pl. Opp. 5, and "is closely familiar with the case due to him being a member of the household and residing at the property in question," *id*. at 9.  Docket Entry 28.

Plaintiff argues that Mr. Gorbaty's trial testimony will not be necessary because Mrs. Gorbaty and the attorney present at the closing will testify about whether disclosures were made at that time.  For the reasons stated above, however, I find that Mr. Gorbaty is, in the words of Rule of Professional Conduct 3.7(a), "likely to be a witness on a significant issue of fact" in these proceedings.  Even if Mr. Gorbaty is not called as a witness at trial, his role as an advocate would pose the very risks to the integrity of the trial articulated by the Seond Circuit in *Murray*.  As noted above, it appears that Mr. Gorbaty signed all or most of the critical documents at issue in this case.  Those documents will undoubtedly be offered and received in evidence if this case

5

proceeds to trial. Mr. Gorbaty, even if not called to testify, will then become an unsworn witness, blurring the line between evidence and argument and precluding cross-examination. *See U.S. v. Napoli*, 2010 WL 1687669, at *5 (E.D.N.Y. Apr. 27, 2010) (disqualifying counsel who would "inevitably be an unsworn witness at the trial" in light of his "firsthand knowledge of the events in question"); *Kattas v. Sherman*, 32 A.D.3d 496, 497 (2d Dep't 2006) (affirming disqualification of counsel who was a potential witness and "intimately involved" in the contract at issue).

Plaintiff further contends that disqualification is not necessary at this early stage of the case because the professional rules are concerned with counsel who will be both an advocate and witness at trial. Pl. Opp. 5. There is support for this argument. *See Gabayzadeh*, 639 F. Supp. 2d at 301 (recognizing that the Rule concerns the risk of trial taint); *Gormin v. Hubregsen*, 2009 WL 508269, at *3 (S.D.N.Y. Feb. 27, 2009) (citing cases for the proposition that attorneys need not be disqualified from participating in pre-trial proceedings under the witness-advocate rule). Here, however, plaintiff has not agreed to forego having Mr. Gorbaty serving as trial counsel, instead only "allow[ing] for the possibility" that Mr. Gorbaty will not be the attorney at trial. Pl. Opp. 5-6. Accordingly, the concern with trial taint remains. Moreover, efficiency and the orderly progress of the case will be better served by disqualification early in the proceedings, when there will be time for plaintiff to find a new attorney to represent her without delaying the trial, for any new attorney to become familiar with the case now and not on the eve of trial, and for counsel who will try the case to be involved in framing the pleadings, taking discovery and bringing any appropriate pretrial motions.

Finally, plaintiff contends that disqualification "will cause a tremendous hardship to Mrs.

6

Gorbaty" because Mr. Gorbaty has been familiar with the case from the beginning, because they reside in the same household, and because hiring an attorney will cause plaintiff financial hardship. Pl. Opp. 4-5. However, a party's "allegation of pecuniary hardship alone is insufficient to avoid disqualification." *See Neufeld v. Neufeld*, 1994 WL 267811, at *4-5 (S.D.N.Y. June 15, 1994). Moreover, as suggested above, finding new counsel later in the litigation may work a greater hardship to plaintiff than securing new counsel now. Finally, there is nothing to prevent Mr. Gorbaty from assisting newly retained counsel with pretrial matters and thereby helping to keep the number of attorney hours required to prosecute the case to a minimum.

## CONCLUSION

This is not a case where plaintiff's counsel had a peripheral or passing connection to the underlying relevant facts. To the contrary, Mr. Gorbaty was a key participant in many of the most important events in the case, including the closing held on July 23, 2007. Moreover, Mr. Gorbaty appears to have signed most, if not all, of the critical documents in issue. His involvement with the underlying events is pervasive and will be repeatedly brought to the attention of the jury at trial. Moreover, particularly at this early stage of the case, there is no reason to believe defendants have moved to disqualify Mr. Gorbaty for improper tactical reasons. *Cf. Murray*, 583 F.3d at 180 (finding that a party's delay in bringing a motion for disqualification until the eve of trial suggested "opportunistic and tactical motives," and reversing the trial court's order disqualifying counsel).

For all these reasons, defendants' motion to disqualify Mr. Gorbaty from representing plaintiff is GRANTED.

SO ORDERED.

/s/
**STEVEN M. GOLD**
**United States Magistrate Judge**

Brooklyn, New York
February 1, 2011

*U:\eoc 2011\gorbaty disqualification 011311.wpd*