UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

KATE GORBATY,

                       Plaintiff,

     -against-

WELLS FARGO BANK, N.A., WELLS FARGO
HOME MORTGAGE, INC., and WELLS
FARGO HOME EQUITY,

                    Defendants.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**10-CV-3291 (NGG) (SMG)**

NICHOLAS G. GARAUFIS, United States District Judge.

      Plaintiff Kate Gorbaty ("Plaintiff" or "Gorbaty") brings two consolidated actions against

Defendants Wells Fargo Bank, N.A., Wells Fargo Home Mortgage, Inc., and Wells Fargo Home

Equity (collectively, "Wells Fargo" or "Defendants").[1]  In July 2007, Gorbaty borrowed an

aggregate of $345,000 from Wells Fargo in order to finance her purchase of a new home in

Scotch Plains, New Jersey.  Gorbaty alleges that Wells Fargo failed to provide her with certain

required disclosures concerning her mortgage and home equity loans, that the disclosures

Defendants did provide contained flawed or inconsistent information, and that Defendants

wrongfully altered the terms of one loan without proper disclosure.  She additionally alleges that

Wells Fargo improperly refused on at least five different occasions to modify her loans.  On

April 18, 2012, the court granted in part and denied in part Wells Fargo's motion to dismiss

Plaintiff's two Complaints.  With the leave of court, Gorbaty's Amended Complaints replead

certain of the dismissed causes of action and add several new causes of action, including:

---

[1] Gorbaty's separately filed actions—Case Nos. 10-CV-3291 and 10-CV-3354—were consolidated under the former docket number. (July 27, 2010, Order (Dkt. 3).)  Accordingly, unless otherwise noted, all references to a docket entry refer to No. 10-CV-3291.

(1) violation of the Real Estate Settlement Procedures Act ("RESPA"); (2) violation of the Truth in Lending Act ("TILA"); (3) violation of Section 349 of the New York Deceptive Practices Act ("DPA"); (4) common law fraud; (5) civil conspiracy to commit fraud; (6) breach of contract with regard to the mortgage and home equity loan agreements; (7) breach of the implied covenant of good faith and fair dealing; and (8) intentional infliction of emotional distress ("IIED"). (See Mortg. Am. Compl. (Dkt. 84); Equity Am. Compl. (Dkt. 85).)

Once again, Defendants move to dismiss the Amended Complaints pursuant to Federal Rule of Civil Procedure 12(b)(6). (Not. of Mot. to Dismiss (Dkt. 95).) For the reasons set forth below, Wells Fargo's motion is GRANTED in part and DENIED in part.

## I.      BACKGROUND

### A.      Factual Background[2]

In July 2007, Wells Fargo extended Kate Gorbaty a mortgage loan in the amount of $276,000 (the "Mortgage Loan") and a home equity loan for $69,000 (the "Equity Loan") in connection with Gorbaty's purchase of a new home in Scotch Plains, New Jersey. (Mortg. Am. Compl. ¶¶ 1, 6-9, Ex. A; Equity Am. Compl. ¶¶ 1, 6-8.) Plaintiff's husband, Dmitry Gorbaty, was also named as a borrower on the loan documents, though he acts as Plaintiff's attorney in this case. (See Mortg. Am. Compl., Ex. A at 1.) The closing for both loans occurred on July 23, 2007, in New Jersey. (Id. ¶¶ 7, 56; Equity Am. Compl. ¶¶ 8, 81.)

In November 2008, Gorbaty began to experience financial hardship due to a significant reduction in her income. (Mortg. Am. Compl. ¶ 21; Equity Am. Compl. ¶ 31.) In July 2009, Plaintiff began applying for loan modification under the Home Affordable Mortgage Program ("HAMP"), which was administered by the U.S. Treasury Department. (Mortg. Am. Compl. ¶

---

[2] For the purpose of considering the instant motion, the court accepts as true the factual allegations in Plaintiff's Amended Complaints. See Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010).

23; Equity Am. Compl. ¶ 33.) Gorbaty applied for loan modification under HAMP on at least five separate occasions between July 2009 and March 2010, but each application was denied without further explanation. (Mortg. Am. Compl. ¶¶ 22-26; Equity Am. Compl. ¶¶ 32-33.) She also submitted a separate modification request concerning the Equity Loan in January 2010 but was again denied. (Id. ¶ 33.) Plaintiff asserts that her HAMP modification applications were also considered under Defendants' "traditional in-house loan modification review," though Wells Fargo did not advise her of the result of those reviews. (Mortg. Am. Compl. ¶¶ 22-26, 78; Equity Am. Compl. ¶¶ 33, 129.) Gorbaty ceased making payments on both the mortgage and equity loans in 2010 (Mortg. Am. Compl. ¶ 21; Equity Am. Compl. ¶ 31), but Wells Fargo apparently has not moved to foreclose on her home (see Oral Arg. Tr., Nov. 1, 2011 (Dkt. 75) at 10; see also Pl.'s Mem. of Law in Opp'n ("Pl. Opp'n") (Dkt. 96) at 21 (noting Gorbaty is on the "verge" of foreclosure).)

As discussed below, a number of federal statutes require mortgage lenders and servicers to provide borrowers with various disclosures explaining the terms and conditions of their loans. Gorbaty alleges that Wells Fargo failed to provide several of these required disclosures and contends that those disclosures that were provided were incomplete, inconsistent, or otherwise misleading. (See Mortg. Am. Compl. ¶¶ 10-20; Equity Am. Compl. ¶¶ 10-30.) The dates and details of these disclosures, as well as Gorbaty's requests for the same, are set forth in the discussion of Plaintiff's legal claims as necessary.

## B. Procedural History

On July 16, 2010, Gorbaty filed her original Complaints asserting nine causes of action against Wells Fargo, including five causes of action under federal law and four common law claims. Gorbaty sought, among other things, declaratory relief, an injunction preventing Wells

Fargo "from continuing to harm [her]," "specific performance of [Wells Fargo's] contractual obligations," actual damages, attorney's fees and costs, statutory damages, punitive damages, and, with respect to the Equity Loan, rescission of the transaction. (Mortg. Compl. (Dkt. 1) at 19-20; Equity Compl. (Case No. 10-CV-3304, Dkt. 1) at 25-26.)

On July 14, 2011, Wells Fargo moved to dismiss Gorbaty's original Complaints pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 57.) The court referred the motion to Magistrate Judge Steven M. Gold for a Report and Recommendation ("R&R"). (Dkt. 49.) On November 29, 2011, Judge Gold recommended that the court grant Wells Fargo's motion to dismiss in its entirety with prejudice. (R&R (Dkt. 76).) Gorbaty timely objected to each section of the R&R (Dkt. 80), and the court accordingly undertook a de novo review of Wells Fargo's entire motion.

By order dated April 18, 2012, the court granted Wells Fargo's motion in part and denied it in part. (Mem. & Order ("MTD Op.") (Dkt. 82).) Specifically, the court denied Defendants' motion with regard to Gorbaty's TILA claim alleging that Wells Fargo did not disclose the alleged change in the terms of her Equity Loan, but granted it with respect to all of Gorbaty's remaining claims. (Id. at 44-45.) Six of Gorbaty's causes of action were dismissed with prejudice,[3] while her remaining claims were dismissed without prejudice. Gorbaty was granted leave to replead these claims, which included: (1) the RESPA claims; (2) the TILA claim based on Wells Fargo's failure to provide required disclosures for the Mortgage Loan; (3) the DPA

---

[3] The claims dismissed with prejudice included: (1) the TILA claim based on Wells Fargo's failure to disclose a right of rescission; (2) the Home Ownership and Equity Protection Act claim; (3) the breach of contract claim associated with HAMP and the related Second Lien Modification Program; (4) the due process claim under the Fifth Amendment to the U.S. Constitution; (5) the claim for breach of the implied covenant of good faith and fair dealing based on Wells Fargo's refusal to modify the Mortgage Loan under HAMP; and (6) the separate claim for civil conspiracy to commit fraud. (MTD Op. at 44-45.)

claims; (4) the claim for breach of the implied covenant of good faith and fair dealing based on Wells Fargo's failure to properly service her loans; and (5) the common law fraud claim. (Id.)

On May 21, 2012, Plaintiff filed a notice of appeal from the court's decision on Defendants' first motion to dismiss. (Not. of Appeal (Dkt. 86).) The appeal was subsequently withdrawn pursuant to Federal Rule of Appellate Procedure 42, and a mandate was issued by the U.S. Court of Appeals for the Second Circuit on August 24, 2012. (Dkt. 98.) Due to a clerical error, that mandate was not filed on the docket for this case until February 4, 2014.

Gorbaty filed her Amended Complaints on May 17, 2012. In addition to attempting to cure the deficiencies identified in the court's prior Order for those claims dismissed without prejudice, Gorbaty asserts several new causes of action, including: (1) breach of contract with regard to the Mortgage and Equity Loan agreements (Mortg. Am. Compl. ¶¶ 86-90; Equity Am. Compl. ¶¶ 133-137); (2) breach of the implied covenant of good faith and fair dealing with regard to the Equity Loan (id. ¶¶ 127-132); (3) common law fraud in connection with the Mortgage Loan (Mortg. Am. Compl. ¶¶ 82-85), and (4) intentional infliction of emotional distress concerning the Equity Loan (Equity Am. Compl. ¶¶ 138-141.) The Amended Complaints also appear to reallege Gorbaty's claims for civil conspiracy to commit fraud and violation of TILA based on Wells Fargo's failure to disclose her right to rescind the Equity Loan, which were both dismissed with prejudice. (Equity Am. Compl. ¶¶ 89-95; 47-51.)

On September 24, 2012, Defendants moved to dismiss the Amended Complaints pursuant to Federal Rule of Civil Procedure 12(b)(6). (Not. of Mot. to Dismiss.)

## II.    STANDARD OF REVIEW[4]

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court evaluates the sufficiency of a complaint under the "two-pronged approach" established by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009). The court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010) (quoting Iqbal, 556 U.S. at 679). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss. Iqbal, 556 U.S. at 663. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. at 664. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (internal quotation marks omitted). Plausibility "is not akin to a probability requirement," but requires "more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks omitted).

## III.    DISCUSSION

For the sake of clarity, the court will proceed with its analysis of Gorbaty's Amended Pleadings by type of claim, considering her efforts to cure the pleading deficiencies identified by the court in its prior opinion and any new claims or theories of liability in the same section when appropriate. First, the court will consider Plaintiff's efforts to replead or otherwise supplement her federal claims under RESPA and TILA. It will next review her efforts to remedy the

---

[4]    Though Gorbaty's original Complaints were filed pro se, her Amended Complaints were filed with the assistance of counsel; namely, her husband, Dmitry Gorbaty. As such, Plaintiff's amended pleading will not benefit from the liberal reading courts are required to afford to the filings of pro se litigants. (See MTD Op. at 5 n.4.)

pleading deficiencies previously identified regarding her DPA claim, and finally will proceed to its consideration of Plaintiff's various state common law claims.

## A. RESPA

Among other things, RESPA requires a lender of any "federally related mortgage loan" to provide the borrower with two documents: (1) a Good Faith Estimate ("GFE") of the settlement costs the borrower is likely to incur, see 12 U.S.C. § 2604(c); and (2) a Uniform Housing and Urban Development Settlement Statement ("HUD-1") that "conspicuously and clearly itemize[s] all charges imposed upon the borrower," id. § 2603. As the court previously noted, these disclosures are integral to understanding Gorbaty's RESPA claims even though she does not allege technical violations of §§ 2603 or 2604. (See MTD Op. 6; see also Mortg. Am. Compl. ¶¶ 10, 16, 30 (alleging Plaintiff did not receive a HUD-1 for her Mortgage Loan prior to closing); id. ¶¶ 11-12, 15-16, 30 (alleging that the GFE provided for the Equity Loan contained terms different from her actual settlement costs)). Rather, Plaintiff's RESPA claims are premised on allegations that Wells Fargo (1) failed to adequately respond to her qualified written requests for information on her loans in violation of § 2605, and (2) charged her for and/or paid "unearned fees and illegal kickbacks" in violation of § 2607.

### 1. Section 2605 Claims

Gorbaty's first set of RESPA claims are brought pursuant to § 2605, which permits a borrower to submit to a *servicer* of her loan(s) a "qualified written request" ("QWR") for "information related to servicing" of the loan and requires the servicer to respond accordingly. 12 U.S.C. § 2605(e)(1)(A).[5] Because Plaintiff does not adequately allege a plausible entitlement to either actual or statutory damages under RESPA, however, her § 2605 claims are dismissed.

---

[5] A QWR is defined as "written correspondence" that: (1) "includes, or otherwise enables a servicer to identify, the name and account of the borrower"; and (2) "includes a statement of the reasons for belief of the borrower . . . that

With regard to the Mortgage Loan, Gorbaty claims that she sent a QWR to Wells Fargo on March 8, 2010, requesting "copies of the entire closing file" for her Mortgage Loan, including the HUD-1 statement, GFE, and TILA disclosures, as well as "a full payment history and any other documents showing loan disbursements, loan charges, payments made, and current principal balance due." (Mortg. Am. Compl., Ex. H; see also id. ¶¶ 17, 30.) On March 24, 2010, Wells Fargo responded to the QWR by providing Plaintiff with GFE and HUD-1 statements for the Mortgage Loan. Plaintiff alleges that had never seen these documents before and that they contained terms different than those in the GFE she received prior to the closing.[6] (Id. ¶¶ 19, 30.) Plaintiff sent Wells Fargo a second QWR for the Mortgage Loan on April 2, 2010, seeking clarification of these discrepancies but received no response. (Id. ¶¶ 20, 31.)

With regard to the Equity Loan, Gorbaty alleges that she sent Wells Fargo a QWR seeking the same information as her first Mortgage Loan QWR on March 8, 2010. (Equity Am. Compl. ¶¶ 16-17, Ex. D.) When she did not receive a response within 20 days,[7] Gorbaty sent a notice of default to Wells Fargo on May 12, 2010. (Id. ¶ 18.) Wells Fargo responded to the QWR on May 24, 2010, providing (1) a HUD-1 statement that Gorbaty had previously received, (2) a TILA disclosure that was materially different from the disclosure she received for the Equity Loan at closing, and (3) a GFE that she had never seen before and that was "general"

---

the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B).

[6] Specifically, Plaintiff alleges that she never received a HUD-1 statement until Wells Fargo responded to her first QWR and that the GFE statement she received and signed shortly before the July 2007 closing differed materially from the GFE statement she received in response to the QWR in 2010. (Mortg. Am. Compl. ¶¶ 10-12, 14-15.) She further alleges that the TILA disclosure she received in response to her Mortgage Loan QWR related to the Equity Loan, not the Mortgage Loan. (Id. ¶ 19.)

[7] RESPA requires that when a borrower submits a QWR, the servicer must "acknowledge[] receipt of the correspondence within 20 days." Id. § 2605(e)(1)(A). Within sixty days after receipt, the servicer must either: (1) "make appropriate corrections in the account of the borrower"; (2) provide a written explanation for why the servicer believes the account is correct; or (3) provide "information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer." Id. § 2605(e)(2).

rather than specific to the Equity Loan. (Id. ¶¶ 19-26.) Gorbaty sent a second QWR to Wells Fargo on May 28, 2010, seeking clarification of the discrepancies and received no response. (Id. ¶ 27.)

In its prior Order, the court dismissed Gorbaty's § 2605 claims because they failed to adequately allege any damages that were proximately caused by Wells Fargo's violation of its duties under RESPA. (MTD Op. at 9-11.) In asserting a claim under § 2605, a plaintiff must sufficiently allege one of two types of available damages: (1) "actual damages to the borrower as a result of the failure" to respond to the QWR or otherwise comply with § 2605; or (2) statutory damages, not to exceed $1,000,[8] "in the case of a pattern or practice of noncompliance with the requirements" of § 2605. 12 U.S.C. § 2605(f). The court previously found that Plaintiff had not adequately alleged either species of damages, noting that the original Complaints "provide[d] no factual allegation linking her alleged harms to Wells Fargo's failure to timely respond to her QWRs or its provision of loan documents that were inconsistent with documents she had received earlier," and that the two § 2605 violations alleged by Gorbaty were insufficient to allege a "pattern or practice of noncompliance." (MTD Op. at 9-11.) She was accordingly granted leave to replead her § 2605 claims to allege additional facts showing either "(1) actual damages *resulting* from Wells Fargo's failure to properly respond to her QWRs and which relate to the *servicing* of her loans; or (2) that Wells Fargo has a 'pattern o[r] practice' of noncompliance with § 2605, which requires more than two violations per Defendant." (Id. at 11 (emphasis in original).)

---

[8] In July 2010, Congress amended § 2605 to increase the cap for statutory damages from $1,000 to $2,000 and to shorten the time in which servicers are required to respond to borrower QWRs, among other things. Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 1463 (2010). However, these changes did not take effect until January 21, 2013, at the earliest, and are thus inapplicable in the case at bar. Berneike v. CitiMortgage, Inc., 708 F.3d 1141, 1145 n.3 (10th Cir. 2013) (discussing effective date of these amendments).

a.    *Actual Damages*

The Amended Complaints again fail to adequately allege actual damages resulting from Defendants' alleged RESPA violations.  In order to recover actual damages, a plaintiff must allege injury and resulting damages that are proximately caused by the loan servicer's failure to adhere to its obligations under § 2605— *i.e.*, the timing and form of Wells Fargo's responses to Plaintiff's QWRs.  See Corazzini v. Litton Loan Servicing LLP, No. 09-CV-199 (MAD), 2010 WL 6787231, at *12 (N.D.N.Y. June 15, 2010) ("[T]he courts have consistently dismissed complaints under RESPA if they do not allege actual damages or state merely that in a conclusory fashion the defendant caused damages to the plaintiff."); Gorham-DiMaggio v. Countrywide Home Loans, Inc., No. 08-CV-019 (LEK), 2009 WL 1748743, at *8 (N.D.N.Y. June 19, 2009), aff'd, 421 F. App'x 97 (2d Cir. 2011).  "'Simply saying that, for example, the servicer's failure to respond to a QWR caused damages without specifying how those damages were caused,' is not enough to survive a motion to dismiss." Bonadio v. PHH Mortg. Corp., No. 12-CV-3421 (VB), 2014 WL 522784, at *6 (S.D.N.Y. Jan. 31, 2014) (internal brackets and citation omitted).

In an effort to cure the pleading deficiencies previously identified with regard to her RESPA claims, Gorbaty has supplemented her original pleadings with allegations that she suffered emotional distress, reputational harm, loss of equity in her home, and the costs of litigation as a result of Defendant's violations of § 2605, among other injuries.  (Mortg. Am. Compl. ¶¶ 27, 34, 37; Equity Am. Compl. ¶¶ 35, 105; see also Pl. Opp'n at 4-6.)  For the sake of clarity, the court addresses each category of damages separately.

i.    *Litigation Costs, Loss of Equity, Reputational Harm*

At the outset, Gorbaty's attempt to predicate her § 2605 claims on the costs of the instant litigation—*i.e.*, that she was "forced . . . to commence litigation to discover and correct violations" that were not adequately addressed in Defendants' responses to her QWRs (Mortg. Am. Compl. ¶ 34; Equity Am. Compl. ¶ 105)—is insufficient to establish an entitlement to actual damages under § 2605. See Roth v. CitiMortgage Inc., No. 12-CV-2446 (SJF), 2013 WL 5205775, at *8 n.6 (E.D.N.Y. Sept. 11, 2013); Lal v. Am. Home Servicing, Inc., 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010) ("[S]imply having to file suit suffice as a harm warranting actual damages. If such were the case, every RESPA suit would inherently have a claim for damages built in.").

Similarly, Plaintiff's threadbare and conclusory recitals that Defendants' conduct "resulted in loss of equity in Plaintiff's home" and caused "damage to reputation" are equally inadequate. (Mortg. Am. Compl. ¶ 34; Equity Am. Compl. ¶ 105.) See Bonadio, 2014 WL 522784, at *6; see also Hayden, 594 F.3d at 161. The Amended Complaints are devoid of any factual allegations that might be read to substantiate the existence of these harms, and Gorbaty has not alleged how such damages could plausibly flow from Wells Fargo's failure to adequately respond to her inquiries under § 2605. Thus, Plaintiff's attempts to premise a claim for actual damages on her litigation costs, the claimed loss of equity in her home, and reputational harm are inadequate to support her § 2605 claims.

ii.    *Emotional Harm*

Plaintiff's allegations of emotional distress are equally insufficient to establish an entitlement to actual damages.[9] To the best of the court's understanding, Gorbaty alleges that

---

[9]    While district courts are divided on the question of whether emotional damages are recoverable as actual damages under § 2605(f), see Hutchinson v. Delaware Sav. Bank FSB, 410 F. Supp. 2d 374, 383 n.14 (D.N.J. 2006)

she suffered "emotional and mental distress" as a result of (1) Defendants' provision of certain closing documents and disclosures in its response to her first QWRs that either did not accord with prior versions she had received or that she had never seen before, (2) the omission of other documents requested in the QWRs from Defendants' responses, and (3) Defendants' failure to respond to her follow-up QWRs seeking clarification of these discrepancies. (Mortg. Am. Compl. ¶¶ 30-31, 34; Equity Am. Compl. ¶¶ 98-103, 105.) However, because Gorbaty's amended pleadings do not allege how Defendants' RESPA violations proximately caused her distress or how her claimed emotional damages relate to Defendants' *servicing* of her loans, they do not support a plausible claim for relief. (See MTD Op. at 10-11 & n.10.)

First, Plaintiff does not adduce sufficient factual allegations linking her purported stress and anxiety to Wells Fargo's failure to adequately respond to her QWRs in violation of § 2605. See Roth, 2013 WL 5205775, at *8 (dismissing claim for emotional damages for failure to allege proximate causation). Despite the conclusory allegations of causation proffered in the Amended Complaints, Plaintiff's own characterization of her emotional harm illustrates the deficiencies in her claim for emotional damages. For instance, Gorbaty alleges that she suffered emotional stress as a result of "knowing that the terms of the loan were changed" and "expecting to lose her home," (Mortg. Am. Compl. ¶ 105; Equity Am. Compl. ¶ 34; see also Defs.' Mem. of Law in Supp. ("Mot. to Dismiss") (Dkt. 95-1) at 8), but Plaintiff does not allege how these purported harms are related to Wells Fargo's alleged failure to appropriately respond to her QWRs in 2010. (See MTD Op. at 10.) Rather, as discussed below, Gorbaty's allegations of emotional damages are causally tied to the content of the closing disclosures she received in response to the QWRs

---

(collecting cases on both sides of issue); Tsakanikas v. JP Morgan Chase Bank N.A., No. 11-CV-888, 2012 WL 6042836, at *4 (S.D. Ohio Dec. 4, 2012) ("Courts are split on whether RESPA allows for the recovery of emotional distress damages."), this court need not reach that issue because it otherwise concludes that Gorbaty's claim for emotional damages are insufficiently pleaded.

and not from any alleged tardiness or inadequacy in Wells Fargo's responses to her inquiries under § 2605.

Nor has Plaintiff adequately alleged that her emotional damages flow from those aspects of her QWRs that address Defendants' *servicing* of her loans. See Williams v. Wells Fargo Bank, N.A., Inc., No. 10-CV-399 (JF), 2010 WL 1463521, at *3 (N.D. Cal. Apr. 13, 2010) ("Not all requests that relate to [a] loan are related to the servicing of the loan."). Section 2605 obligates a loan servicer to respond to QWRs only insofar as those requests seek "information relating to the servicing of such loan[s]," with "servicing" defined as "receiving any scheduled periodic payments from a borrower" and applying such proceeds to the principal, interest, and other amounts owed to the holder of the loan. 12 U.S.C. §§ 2605(e)(1)(A), (i)(3).[10] Indeed, "[c]ourts routinely interpret section 2605 as requiring a QWR to relate to the servicing of a loan, rather than the creation or modification of a loan." Gates v. Wachovia Mortg., FSB, No. 09-CV-02464 (FCD), 2010 WL 2606511, at *3 (E.D. Cal. June 28, 2010); see also Corazzini v. Litton Loan Servicing LLP, No. 09-CV-199 (MAD), 2010 WL 6787231, at *11-12 (N.D.N.Y. June 15, 2010) (dismissing RESPA claim where servicer adequately responded to those elements of QWR that related to servicing).

Based on the court's understanding of the gravamen of Gorbaty's RESPA claims, it is clear that her emotional damages claims relate to those elements of the QWRs that dealt with the origination and purported modification of her loans, not to Defendants' failure to properly service her loans (*i.e.*, the receipt, processing, and crediting of Plaintiff's scheduled payments). While Gorbaty's initial QWRs did request certain information related to servicing—"a full

---

[10] See also Hintz v. JPMorgan Chase Bank, N.A., No. 10-2825 (MJD), 2011 WL 579339, at *8 (D. Minn. Feb. 8, 2011) ("RESPA does not require a servicer to respond to any question that a borrower may ask—no matter how broad, vague, or far afield."), aff'd, 686 F.3d 505 (8th Cir. 2012); Copeland v. Lehman Bros. Bank, FSB, No. 09-CV-1774 (WQH), 2010 WL 2817173, at *3 (S.D. Cal. July 15, 2010) ("A loan servicer only has a duty to respond if the information request is related to loan servicing.").

payment history and any other documents showing loan disbursements, loan charges, payments made, and current principal balance due"—and stated that "there were numerous errors made in the servicing of my account" (Mortg. Am. Compl., Ex. H; Equity Am. Compl., Ex D), the Amended Complaints do not allege any deficiency in Defendants' responses to these aspects of her requests. Rather, Plaintiff's claims for emotional damages relate solely to Wells Fargo's alleged provision of inconsistent closing documents that relate to the origination of her loans (*e.g.*, TILA, GFE, and HUD-1 statements), Wells Fargo's omission of such documents from its responses (*e.g.*, the TILA disclosure for the Mortgage Loan), and Wells Fargo's failure to respond to follow-up requests concerning those same disclosures. (Mortg. Am. Compl. ¶¶ 10-15, 30-31, 34; Equity Am. Compl. ¶¶ 11-27, 98-103, 105; see also Pl. Opp'n at 2-6.) Because these materials concern the origination and alleged modification of Gorbaty's loans, rather than servicing of her payments, they do not relate to Defendants' role as a servicer and accordingly fall outside the ambit of § 2605. Thus, in addition to failing to adequately allege causation for her emotional damages, Plaintiff's claims do not relate to the servicing of her loans and therefore fail to state a claim for relief under § 2605.[11]

### iii. *Harm to Creditworthiness*

Finally, Plaintiff alleges that she suffered actual damages because Defendants "reported late payments to Credit Bureau, which caused other providers of credit to close balances

---

[11] See, e.g., Bray v. Bank of Am., No. 09-CV-075, 2011 WL 30307, at *12 (D.N.D. Jan. 5, 2011) (dismissing RESPA claim when "[t]he ongoing communications sent to the Defendants challenge the validity of the loan and accuse the Defendants of various statutory violations, but none of the communications relate to the servicing of the loan as that term is defined by statute"); Corazzini, 2010 WL 6787231, at *11-12 (rejecting § 2605 claim where servicer adequately responded to those elements of QWR that related to servicing, noting that "requests for information regarding origination-related materials . . . do not satisfy the RESPA's 'servicing of [the] loan' requirement"); Williams v. Wells Fargo Bank, N.A., Inc., No. 10-CV-00399 (JF), 2010 WL 1463521, at *3-4 (N.D. Cal. Apr. 13, 2010) (dismissing § 2605 claim where QWR "requested [documents] relate[d] to the original loan transaction"); MorEquity, Inc. v. Naeem, 118 F. Supp. 2d 885, 901 (N.D. Ill. 2000) (dismissing RESPA claim where QWRs "sought information about the validity of the loan and mortgage documents" and did not relate to servicing).

available to Plaintiff who relied on these balances" [sic throughout]. (Equity Am. Compl. ¶ 105; Mortg. Am. Compl. ¶ 34.) In addition to obligating servicers to respond to duly received QWRs, § 2605(e)(3) also provides that during the 60-day window following receipt of a valid QWR the "servicer may not provide information regarding any overdue payment . . . to any consumer reporting agency." 12 U.S.C. § 2605(e)(3). To adequately allege a claim under § 2605(e)(3), a plaintiff must "assert (i) that she sent defendants a qualified written request; (ii) that defendants submitted information regarding plaintiff's overdue payments to a credit reporting agency; and (iii) that defendants submitted such information within 60 days after defendants received plaintiff's qualified written request." Midouin v. Downey Sav. & Loan Ass'n, F.A., 834 F. Supp. 2d 95, 111 (E.D.N.Y. 2011) (citations omitted).

Denial of credit resulting from a violation of § 2605(e)(3) has been recognized to support a claim for actual damages under RESPA. See Hutchinson, 410 F. Supp. 2d at 383 ("'[D]enial of credit because of the reporting of [delinquent charges] to credit reporting agencies' can sustain a claim of actual damages under RESPA." (footnote and citation omitted)). Here, however, Gorbaty does not allege when Wells Fargo made the offending reports to the credit agencies, and thus fails to adequately allege that the violations occurred within the 60-day statutory period. This is fatal to Plaintiff's claim under § 2605(e)(3). See, e.g., Midouin, 834 F. Supp. 2d at 111-12 & n.19 (dismissing § 2605(e)(3) claim due to plaintiff's failure to allege when negative information was reported to credit reporting agencies).

b.    *Statutory Damages*

Plaintiff also fails to remedy the pleading deficiency that led the court to dismiss her claim for statutory damages. In order to obtain statutory damages, a plaintiff must establish a "pattern or practice of noncompliance with the requirements" of § 2605. 12 U.S.C. § 2605(f);

McLean v. GMAC Mortg. Corp., 585 F. Supp. 2d 1360, 1365 (S.D. Fla. 2009) (finding "pattern or practice" in § 2605(f) means "a standard or routine way of operating"). Noting that Gorbaty had alleged only two RESPA violations per Defendant, the court concluded in its prior Order that the original Complaints did not adequately allege a "pattern or practice" of RESPA violations and granted Plaintiff leave to amend her pleadings with additional factual allegations supporting her request for statutory damages. (MTD Op. at 11.)

The Amended Complaints likewise fall short in this regard. Plaintiff has not adduced any factual allegations suggesting additional RESPA violations by the Defendants beyond those already alleged; rather, she argues attempts to establish the requisite "pattern or practice" by separating the same two § 2605 violations into their constituent parts. (Mortg. Am. Compl. ¶ 34; Equity Am. Compl. ¶ 105; see also Mot. to Dismiss at 8.) This is plainly insufficient (see MTD Op. at 10-11), and Plaintiff's claim for statutory damages is again dismissed.

*    *    *

For the foregoing reasons, Plaintiff's § 2605 claims are DISMISSED WITHOUT PREJUDICE insofar as Plaintiff claims actual damages resulting from Defendants' alleged reporting of late payments to the credit reporting agencies in violation of § 2605(e)(3). Should Plaintiff wish to re-amend her pleadings pursuant to Federal Rule of Civil Procedure 15, she must file a letter requesting a pre-motion conference in accordance with the court's Individual Rules of Practice within sixty (60) days of entry of this Memorandum and Order. Such letter should also include: (1) the dates on which Defendants made the offending reports or other factual allegations showing that such reports occurred within the 60-day statutory window; and (2), to the extent her § 2605 claims are predicated on the April 2 and May 28 follow-up requests for information, additional allegations detailing the content of those requests in order to show

that they were related to the servicing of her loans and therefore qualify as QWRs. (See Mot. to Dismiss at 5-6 (challenging the second requests' status as QWRs).)

Plaintiff's remaining § 2605 claims are DISMISSED WITH PREJUDICE as, in the court's view, further amendments to the pleadings would be futile. See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).

### 2. Section 2607 Claim

Plaintiff also asserts a claim under § 2607 of RESPA in connection with her Mortgage Loan, alleging that Defendants charged her for "unearned fees and illegal kickbacks" that were paid to the mortgage broker on her loans. (Mortg. Am. Compl. ¶¶ 35-40.) Section 2607 prohibits the payment or acceptance of both "unearned fees"[12] and "business referral fees"[13]—or, as Plaintiff refers to them, "kickbacks"—in connection with the provision of real estate settlement services. See 12 U.S.C. § 2607. In its prior Order, the court dismissed Gorbaty's § 2607 claim as "too vague and conclusory to state a claim" and granted her leave to amend her pleading to include additional allegations showing that the fees at issue either "(1) were business referral fees, . . . or (2) were not 'for services actually performed.'" (MTD Op. 11-13 (citations omitted).) Because Gorbaty has not remedied the deficiencies previously identified by the court, however, her § 2607 claim is again dismissed.

The Amended Mortgage Complaint alleges three sets of fees that purportedly violate § 2607, including: (1) "loan discount fees" of $276 and $2,760 that were either unearned or improper business referral fees paid to the mortgage broker because the interest rate on

---

[12] "Unearned fees" are defined for the purposes of this opinion as "any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service . . . other than for services actually performed." 12 U.S.C. § 2607(b); Cohen v. J.P. Morgan Chase & Co., 498 F.3d 111, 124-25 (2d Cir. 2007) (noting § 2607 prohibits the payment of "unearned fees").

[13] "Business referral fees" are defined as "any fee, kickback, or thing of value" given in exchange for the referral of any business linked with a "real estate settlement service." 12 U.S.C. § 2607(a).

Gorbaty's Mortgage Loan was not correspondingly reduced; (2) a $2,036.88 commission charged by Wells Fargo and paid to the mortgage broker that was unearned; and (3) a $999 application fee paid to the mortgage broker that was either unearned or an improper referral fee because the broker had previously agreed not to charge an application fee. (See Mortg. Am. Compl. ¶¶ 16, 35.) According to Plaintiff, these fees were not disclosed on the GFE statement for the Mortgage Loan that she received and signed prior to the closing and she only became aware of them when Wells Fargo provided her a HUD-1 for that loan in response to her first QWR. (Id.)

As a preliminary matter, Gorbaty's allegations remain too vague and conclusory to state a claim for relief under § 2607. The Amended Mortgage Complaint contains no new factual allegations to support Plaintiff's labeling of the loan discount and application fees as improper business referral fees. Rather, she appears to assume that because such fees were allegedly unearned they must have been paid as kickbacks to the mortgage broker. (See Mortg. Am. Compl. ¶¶ 16, 35.) This flawed reasoning does not satisfy the court's prior Order that Plaintiff must allege additional *facts* to show that these fees were in fact improper business referral fees. (MTD Op. at 12-13.) Similarly, the Amended Mortgage Complaint includes no new allegations indicating why the commission paid to the mortgage broker was "unearned" or otherwise improper. As such, Plaintiff's § 2607 claim predicated on that fee remains impermissibly vague and conclusory. (See MTD Op. at 12-13.)

Plaintiff's assertion that the loan discount fees were unearned because the interest rate on her Mortgage Loan was not accordingly reduced is similarly flawed. (Mortg. Am. Compl. ¶¶ 16, 35.) The Amended Mortgage Complaint does not include any factual allegations showing what the actual interest rate on the Mortgage Loan was, to what rate it should have been lowered, or

that the parties agreed to a lower interest rate than that actually charged. To the contrary, Gorbaty appears to acknowledge that the HUD-1 she received in 2010 does, in fact, reflect a 0.1% reduction in the interest rate. (Id. ¶ 16 ("HUD-1 shows loan discount of 0.1%" while GFEs did not).) Likewise, Plaintiff's bare allegation that the $999 application fee paid to the mortgage broker was not agreed upon does not render it "unearned" for purposes of § 2607; indeed, the Amended Mortgage Complaint includes no allegations suggesting that the broker did not, in fact, perform any services for Plaintiff. As such, Plaintiff has not cured the pleading deficiencies previously identified by the court in her § 2607 claim, and it is accordingly subject to dismissal.

Even if Plaintiff's § 2607 claim were adequately alleged, it is barred by RESPA's one-year statute of limitations, which runs from the date of the alleged violation—*i.e.*, the payment of the illicit referral or unearned fees at closing. 12 U.S.C. § 2614; see Williams v. Aries Fin., LLC, No. 09-CV-1816 (JG)(RML), 2009 WL 3851675, at *8-9 (E.D.N.Y. Nov. 18, 2009) ("It is well-settled that in closed-end transactions, such as mortgage loans, the date of accrual for the statute of limitations is the date the plaintiff entered the loan agreement.").[14] (See also Mot. to Dismiss at 9.) Here, the discount and application fees challenged by Plaintiff were charged and paid when the Mortgage Loan transaction settled in July 2007 and the limitations period therefore expired in July 2008, nearly two years before this suit was filed. (See also Mortg. Am. Compl., Ex. A (challenged fees listed under heading "PAID FROM BORROWER'S FUNDS AT SETTLEMENT").) Thus, Plaintiff's § 2607 claim is time-barred unless equitable tolling applies.

Plaintiff argues that the court should equitably toll RESPA's one-year statute of limitations on the § 2607 claim because she only became aware of the illicit fees once Wells

---

[14] See also Snow v. First Am. Title Ins. Co., 332 F.3d 356, 359-61 (5th Cir. 2003) (interpreting RESPA's statute of limitations as running from the date of the closing); Veres v. Wells Fargo Bank, N.A., No. 12-CV-3119 (REB), 2014 WL 1133186, at *6 (D. Colo. Mar. 21, 2014) (rejecting applicability of discovery rule to RESPA statute of limitations as consistent with bulk of authority).

Fargo provided the HUD-1 statement on March 24, 2010. (Mortg. Am. Compl. ¶ 36; Pl. Opp'n

at 8-9.) Yet equitable tolling is appropriate only "in rare and exceptional circumstances in which

a party is prevented in some extraordinary way from exercising his rights." Zerilli-Edelglass v.

N.Y.C. Transit Auth., 333 F.3d 74, 80 (2d Cir. 2003) (internal quotation marks, alterations, and

citation omitted). To determine whether to apply equitable tolling, the court "must consider

whether the person seeking application of the equitable tolling doctrine (1) has acted with

reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the

circumstances are so extraordinary that the doctrine should apply." Id. at 80-81 (internal

quotation marks omitted). The "burden of proving that tolling is appropriate rests on the

plaintiff." Chapman v. Choice-Care Long Island Term Disability Plan, 288 F.3d 506, 512 (2d

Cir. 2002).

The court agrees with Wells Fargo that Plaintiff's delayed receipt of the HUD-1

statement for the Mortgage Loan does not warrant application of the equitable tolling doctrine.[15]

(See Mot. to Dismiss at 8-10.) The facts underlying Gorbaty's § 2607 claim—i.e., the fees

charged to and paid by Plaintiff at the closing—are associated with the origination of her

mortgage loan and have been readily discoverable since that transaction settled in 2007.

Furthermore, having acknowledged that she received a HUD-1 statement for her Equity Loan

(Equity Am. Compl. ¶ 11), Gorbaty cannot be said to have exercised "reasonable diligence" in

failing to request a HUD-1 statement for the Mortgage Loan before she sent her first QWR on

---

[15] Wells Fargo also notes that the apparent conflict between the HUD-1 statement provided by Plaintiff (Equity Am. Compl., Ex. A)—which appears to bear the signatures of both Plaintiff and Mr. Gorbaty and is dated July 23, 2007—and the Amended Mortgage Complaint—which alleges that the HUD-1 was not provided until 2010 and is signed by Mr. Gorbaty in his capacity as Plaintiff's attorney—suggests a violation of Federal Rule of Civil Procedure 11. (See Mot. to Dismiss at 9 n.4.) Should Defendants wish to pursue sanctions against the homeowner, they must make such motion separately and it will be considered by the court in due course. See Fed. R. Civ. P. 11(c)(2).

March 8, 2010. Thus, no "exceptional circumstances" exist to warrant application of the equitable tolling doctrine to Gorbaty's § 2607 claims.

As Plaintiff has not cured the pleading deficiencies previously identified by the court, and because the claim nonetheless is time-barred, Plaintiff's § 2607 claim is DISMISSED WITH PREJUDICE.

### B.     TILA

Plaintiff's Amended Complaints also assert several claims under TILA, which was enacted by Congress to "assure a meaningful disclosure of credit terms" in consumer credit transactions. 15 U.S.C. § 1601(a). To that end, TILA requires lenders to provide an array of "clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412 (1998); see also 15 U.S.C. § 1638. These TILA disclosures are generally provided in a Truth in Lending Disclosure Statement ("TILDS") at closing.

As in the original Complaints, Gorbaty's Amended Complaints include three separate claims under TILA, alleging that: (1) Wells Fargo did not provide Plaintiff with a TILDS for the Mortgage Loan (Mortg. Am. Compl. ¶¶ 13, 41-49); (2) the TILDS provided for the Equity Loan contained terms that differed from the terms of the loan Gorbaty actually received and that Defendants failed to disclose that change (Equity Am. Compl. ¶¶ 11, 20-22, 36-41, 45, 52-63); and (3) the TILDS provided by Wells Fargo for the Equity Loan failed to inform Gorbaty of her right to rescind the transaction (id. ¶¶ 15, 42-44, 46-51.) Plaintiff's third TILA claim concerning her right to rescission, however, was previously dismissed by this court with prejudice and may

not be revived in her Amended Equity Complaint.[16] (MTD Op. at 23-26.) The court addresses Gorbaty's remaining claims in turn.

1.  Failure to Provide TILDS for Mortgage Loan

As in her original Complaints, Gorbaty alleges that Wells Fargo violated TILA by failing to provide her with a TILDS for the Mortgage Loan. (Mortg. Am. Compl. ¶¶ 13, 41-49.) By its prior Order, the court dismissed that claim without prejudice as time-barred under TILA's one-year statute of limitations. (MTD Op. at 14-17.) Plaintiff was granted leave to supplement her request that the limitations period be equitably tolled with allegations showing that "Wells Fargo committed an affirmative act of concealment preventing her from discovering Wells Fargo's alleged nondisclosure," as required under TILA.[17] (Id.) As the court noted in its prior Order, courts generally hold that "[i]n a TILA . . . case, equitable tolling will not be applied unless the plaintiff alleges affirmative acts of concealment by the defendant over and above any alleged non-disclosure that forms the basis of her claims." Futterman v. Wash. Mut. Bank, No. 10-CV-01002 (LEK), 2010 WL 5067650, at *2 (N.D.N.Y. Dec. 6, 2010); see also Williams v. Aries Fin., LLC, No. 09-CV-1816 (JG), 2009 WL 3851675, at *7 (E.D.N.Y. Nov. 18, 2009); Cardiello v. Money Store, Inc., No. 00-CV-7332 (NRB), 2001 WL 604007, at *5 (S.D.N.Y. June

---

[16] Gorbaty appears to recognize as much, inserting the notation "[Reserved]" before each paragraph of the Amended Equity Complaint that addresses the rescission aspect of her TILA claim. (See Equity Am. Compl. ¶¶ 15, 42-44, 46-51.) That notation is used elsewhere in the amended complaints to presumably mark deletions from the original pleadings. Additionally, the court sees no reason to revisit its earlier decision dismissing that claim with prejudice. See Johnson v. Holder, 564 F.3d 95, 99 (2d Cir. 2009) ("'[W]hen a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise." (internal quotation marks and citation omitted)).

[17] "This rule is intended to avoid rendering the statute of limitations meaningless. If nondisclosure tolled the statute of limitations for a claim brought based on nondisclosure, the statute of limitations would have no effect." Futterman, 2010 WL 5067650, at *2 (internal quotation marks omitted). Thus, in addition to the acts giving rise to the TILA claim, "the plaintiff must identify 'some trick or contrivance intended to exclude suspicion and prevent inquiry.'" Id. (quoting Moll v. U.S. Life Title Ins. Co. of N.Y., 700 F. Supp. 1284, 1291 (S.D.N.Y. 1988)); see also McAnaney v. Astoria Fin. Corp., No. 04-CV-1101 (JFB) (WDW), 2007 WL 2702348, at *7 (E.D.N.Y. Sept. 12, 2007).

1, 2001) ("In cases involving TILA, the courts have held uniformly that fraudulent conduct beyond the nondisclosure itself is necessary to equitably toll the running of the statute of limitations."), aff'd, 29 F. App'x 780 (2d Cir. 2002).

Because Plaintiff's amended pleading does not allege an affirmative act of concealment beyond the nondisclosure itself, the court declines to equitably toll TILA's limitations period. (See Mortg. Am. Compl. ¶ 47.) In support of her claim for equitable tolling, Gorbaty first alleges that Wells Fargo did not just fail to provide TILA disclosure, it "concealed TILA" in order to avoid disclosing that it had violated RESPA's § 2607. (Id. ("Defendant affirmatively concealed [the § 2607 violations] by not providing TILA."); see also Pl. Opp'n at 10-12.) But merely ascribing a motive to Wells Fargo's nondisclosure does not show the existence of affirmative acts of concealment that might warrant application of the equitable tolling doctrine. The assertion that Wells Fargo allegedly sought to "conceal unearned fees and illegal kickbacks" (id.) by not providing TILA disclosure does not justify excusing Plaintiff's failure to bring a timely claim, particularly because she did receive a TILDS for her Equity Loan and had ample opportunity to demand the same for the Mortgage Loan. (MTD Op. at 15-16; Mortg. Am. Compl. ¶ 47 (Plaintiff did not begin "due diligence" until 2010).) Despite the court's instructions, Plaintiff does not supplement her original pleadings with factual allegations showing how or by what means Wells Fargo accomplished this concealment.

Nor does Plaintiff's new allegation that Wells Fargo provided the closing documents and disclosures in "one pile" suffice to plead an affirmative act of concealment (id. ¶ 47; Pl. Opp'n at 11), much less the type of "rare and exceptional circumstances" that might warrant equitable tolling. Zerilli-Edelglas, 333 F.3d at 80. Plaintiff received said "pile" in July 2007 and had several years in which she could have discovered the absence of a TILDS for her Mortgage

23

Loan. Finally, to the extent Plaintiff rests her claim for equitable tolling on Defendants' "[c]ontinuing refusal" to provide a TILDS in their response to her first QWR in March 2010 (see Mortg. Am. Compl. ¶ 47)—a theory that has itself been rejected by other courts, see Van Pier v. Long Island Sav. Bank, 20 F. Supp. 2d 535, 538-40 (S.D.N.Y. 1998) (collecting cases for proposition that "alleged continuing failure to provide TILA disclosure is not a 'continuing violation' for purposes of the one-year statute of limitations")—that theory cannot not save this TILA claim as the statute's one-year limitation period expired on July 23, 2008, [18] nearly two years *before* Plaintiff's first QWR.[19]

Having failed to supplement her Amended Mortgage Complaint with factual allegations showing some distinct trick or contrivance by Wells Fargo aimed at preventing Gorbaty from discovering its alleged nondisclosure, the court declines to equitably toll TILA's one-year statute of limitations with regard to Gorbaty's first TILA claim. Accordingly, Plaintiff's TILA claim concerning her Mortgage Loan is DISMISSED WITH PREJUDICE as untimely.

### 2. Failure to Disclose Change in Terms of Equity Loan

Gorbaty's only remaining TILA claim concerns the terms of her Equity Loan, which she claims were "drastically changed" by Wells Fargo without adequate disclosure. (Equity Am.

---

[18] See 15 U.S.C. § 1540(e) (requiring TILA suits to be initiated "within one year from the date of the occurrence of the violation"); Cardiello, 2001 WL 604007, at *3 ("It is well-settled law that in 'closed-end credit' transactions, like the [mortgage and home equity loans] at issue, the 'date of the occurrence of violation' is no later than the date the plaintiff enters the loan agreement or, possibly, when defendant performs by transmitting the funds to plaintiffs.") (collecting cases); see also Johnson v. Scala, No. 05-CV-5529 (LTS), 2007 WL 2852758, at *3 (S.D.N.Y. Oct. 1, 2007) ("Case law supports the notion that the statute of limitations for TILA claims does not start running upon the discovery of the non-disclosure, but, rather, upon the funding of the loan.").

[19] See Grimes v. Fremont Gen. Corp., 785 F. Supp. 2d 269, 287 (S.D.N.Y. 2011) ("To warrant equitable tolling, Plaintiffs must plead that Defendants took some action to conceal the TILA violations during the one-year applicable statutory period following the consummation of the loan . . . ."); McAnaney, 2007 WL 2702348, at *10 (finding that because one year had passed since "the allegedly concealing acts by defendants . . . 'there was no [TILA] limitations period to toll'") (citation omitted); Cardiello, 2001 WL 604007, at *4 ("The *sine qua non* of fraudulent concealment is that the defendant fraudulently concealed from the plaintiff his cause of action *during the time in which plaintiff could have brought that action*. Absent such allegations, equitable tolling does not apply." (emphasis in original)).

Compl. ¶¶ 11, 20-22, 36-41, 45, 52-63.) For the reasons set forth below, and consistent with its prior Order, Defendants' motion to dismiss this claim is denied.

Plaintiff alleges that the TILDS she received for her Equity Loan at the closing, which is appended to the Amended Equity Complaint ("TILDS #1"), accurately reflected the loan terms she agreed to with Defendants, namely: a thirty-year loan at 9% interest requiring 359 payments of $555.19 and one payment of $555.10. (Id. ¶ 12, Ex. A.) The GFE statement she received the same day (the "GFE #1") likewise reflected a 360-month loan. (Id. ¶ 13, Ex. C.) Sometime thereafter,[20] Plaintiff alleges, Wells Fargo unilaterally and without adequate disclosure changed the terms of her loan, converting it to a fifteen-year instrument requiring 179 payments of $557.42 and one final balloon payment of $55,496.28. (Id. at 45.) Gorbaty first discovered these changes when she received a second, and materially different, TILDS in response to one of her QWRs (the "TILDS #2") on May 24, 2010. (Id.; Ex. H.) Plaintiff alleges that she "never agreed to these terms," that she did not sign or become aware of the terms disclosed in the TILDS #2 statement until May 24, 2010, and that she would have "walk[ed] away from the transaction if th[ese] were the terms." (Id. ¶ 20, 22.)

In its prior Order, the court held that Gorbaty had stated a timely claim under TILA. (MTD Op. at 17-23.) Central to that decision was the court's determination that it could not rely on Gorbaty's apparent signature on either the TILDS #2 or the mortgage and note for the Equity Loan provided by Wells Fargo (the "Equity Note"), both of which provided for a fifteen-year

---

[20] As discussed infra at note 37, there is some ambiguity in the Amended Equity Complaint concerning whether the parties ever had a written agreement consistent with the original terms alleged by Plaintiff (i.e., thirty years of roughly equal payments) and the timing of the purported change to Plaintiff's Equity Loan. Nonetheless, as set forth in this section, the court does not find Defendants' arguments in favor of dismissal are sufficient to warrant revisiting its earlier decision upholding Plaintiff's TILA claim concerning the Equity Loan. See Johnson v. Holder, 564 F.3d at 99 (2d Cir. 2009) ("'[W]hen a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise." (internal quotation marks and citation omitted)).

loan and final balloon payment, to resolve the claim in favor of Defendants. (Id. at 18-21.)

Plaintiff expressly challenged the authenticity of her signatures on both the Equity Note and

TILDS #2, and the court otherwise assumed the truth of Gorbaty's allegation that she did not

receive the TILDS #2 until May 2010. (Id. 18-21 & n.17 (noting Gorbaty "disputes the

authenticity, accuracy, and receipt of the mortgage and note"); see also Decl. of Jordan L. Estes

in Supp. of Defs.' Mot. to Dismiss ("Estes Decl."), Ex. B (attaching the Equity Note) (Dkt. 59).)

Wells Fargo has again moved to dismiss Gorbaty's TILA claim on the Equity Loan by

arguing that her inclusion of a new claim for breach of contract, as discussed infra in Part D.3,

opens the door to the court's consideration of the previously disregarded Equity Note. (Mot. to

Dismiss at 13-14 ("There is no longer any reason to decline to consider the Note and

Mortgage.").) The court disagrees. The mortgage and note for the Equity Loan provided by

Wells Fargo are not "integral" to Gorbaty's Amended Equity Complaint and thus may not be

considered in connection with the instant motion. See Mangiafico v. Blumenthal, 471 F.3d 391,

398 (2d Cir. 2006) (stating a document is "integral" to a complaint "where the complaint relies

heavily upon its terms and effect" (citation omitted)). Quite to the contrary, Plaintiff's breach of

contract claim is premised on Defendants' alleged breach of an original agreement that had the

same terms as outlined in the TILDS #1 and GFE #1 statements (i.e., a thirty-year instrument

with no balloon payment), and not a breach of the fifteen-year Equity Note relied on by Wells

Fargo. (See, e.g., Equity Am. Compl. ¶¶ 133-137 ("Defendant breached the contract by

materially changing the terms of the Equity Loan, such as changing the length of payment from

thirty to fifteen, [and] adding balloon payment at the end of 15th year . . . ."); Pl. Opp'n at 13,

18-20.)

26

Even if Equity Note provided by Wells Fargo were "integral" to Gorbaty's breach of contract claim, the court would still be unable to consider them to her detriment as she expressly disputes the documents' authenticity. (Pl. Opp'n at 12-13 ("Note and Mortgage are still very much disputed."); MTD Op. at 20-21 (discussing Gorbaty's challenge to the authenticity of the Equity Note).) See Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006) (noting that "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document" before it may be relied upon at the dismissal stage).

Accordingly, the court sees no reason to revisit its earlier determination of this issue and Defendants' motion to dismiss Gorbaty's TILA claim regarding the Equity Loan is again DENIED. See Johnson v. Holder, 564 F.3d at 99.

### C. Deceptive Practices Act

Relying on the same misleading disclosures discussed above, Plaintiff also realleges her claims under New York's Deceptive Practices Act, N.Y. Gen. Bus. Law § 349, with regard to both the Mortgage and Equity Loans, which were previously dismissed by the court without prejudice. (Mortg. Am. Compl. ¶¶ 50-59; Equity Am. Compl. ¶¶ 74-84; MTD Op. at 34-35.) Section 349(a) prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]." N.Y. Gen. Bus. Law § 349. "To state a claim under § 349, a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." Spagnola v. Chubb Corp., 574 F.3d 64, 74 (2d Cir. 2009) (citing Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000) (per curiam)). However, as § 349 is intended to "protect consumers in their transactions that take place in New York State," to qualify as a prohibited act

under the statute "the deception of a consumer must occur in New York." Goshen v. Mutual Life Ins. Co., 98 N.Y.2d 314, 325 (2002).

Applying that standard, the court previously held that Gorbaty's vague and conclusory assertion that the "closing began partially in New York" was insufficient to establish that the deception underlying her § 349 claim occurred in New York. (MTD Op. at 34-35.) Since that decision, the Second Circuit has identified two divergent lines of case law regarding the proper focus of the DPA's territorial inquiry:

> The first line of decisions derives from a statement in Goshen that "to qualify as a prohibited act under the statute, the *deception* of a consumer must occur in New York." Those decisions focus on where the deception of the plaintiff occurs and require, for example, that a plaintiff actually view a deceptive statement while in New York. The second line of cases appears to be premised on the assertion in Goshen that "the *transaction* in which the consumer is deceived must occur in New York." These cases focus on where the underlying deceptive "transaction" takes place, regardless of the plaintiff's location or where the plaintiff is deceived.

Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 122-24 (2d Cir. 2013) (emphasis added) (citations omitted). Though the Cruz court applied the transactional inquiry to a case brought by out-of-state victims who executed transactions in New York, it did not purport to hold that the "transaction" rule applied universally. See id. Here, Plaintiff supplements her DPA claim by alleging that "the closing itself was done in two parts, where all the documents were provided by defendant by fax and email and completed on the preceding night in New York" and that those documents were merely delivered the following day at the closing in New Jersey. (Mortg. Am. Compl. ¶ 56; Equity Am. Compl. ¶ 81.) Thus, while it appears that the transactions at issue in this case occurred in New Jersey, Plaintiff plausibly alleges Wells Fargo's deception occurred (or at least began) in New York upon the delivery of the misleading documents. Fortunately, the court need not resolve which territorial analysis applies as alternative grounds for dismissal exist.

Plaintiff has failed to adequately allege that Wells Fargo's allegedly deceptive conduct was "consumer-oriented," as required by § 349(a). The gravamen of a § 349 claim is that the offending act or practice be directed "against the consuming public," and not a "single-shot transaction." Silverman v. Household Fin. Realty Corp. of New York, No. 12-CV-3559 (LDW), 2013 WL 4039381, at *2 (E.D.N.Y. Aug. 5, 2013) (citing Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20 (1995)); see also Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 264 (2d Cir. 1995) ("[T]he gravamen of the complaint must be consumer injury or harm to the public interest.").[21] Thus, "private contractual disputes which are unique to the parties do not fall within the ambit of the statute." Yellow Book Sales & Dist. Co., Inc. v. Hillside Van Lines, Inc., 98 A.D.3d 663, 665 (2d Dep't 2012); see Oswego, 85 N.Y.2d at 25; Canario v. Gunn, 300 A.D.2d 332, 333 (2d Dep't 2002); see also Silverman, 2013 WL 4039381, at *2; Nw. Mut. Life Ins. Co. v. Wender, 940 F. Supp. 62, 65 (S.D.N.Y. 1996) (dismissing § 349 claim where claim was "essentially a private contract dispute relating to the specific facts at hand").

In the present case, Gorbaty's allegations clearly derive from the particular circumstances of her "single shot" transactions with Wells Fargo. Specifically, her claims stem from the timing of the required disclosures provided by Wells Fargo, its attempt to change the agreed upon terms of Gorbaty's Equity Loan, its charging her for certain fees paid to American Mortgage Company, and its denial of Gorbaty's applications for loan modification. Plaintiff's allegations thus relate to her individual Mortgage and Equity Loans, and her Amended Complaints do not suggest that

---

[21] While § 349's "consumer-oriented" element does not require proof of "a repetition or pattern of deceptive behavior," the law is clear that plaintiffs "must demonstrate that the acts or practices have a broader impact on consumers at large." Oswego, 85 N.Y.2d at 25.

Defendants' "acts or practices ha[d] a broader impact on consumers."[22] See Oswego, 85 N.Y.2d at 245; Yellow Book, 98 A.D.3d at 664-65.

Accordingly, regardless of the territorial requirements of § 349, Plaintiff has not stated a plausible claim for relief under the DPA because the Defendants' purportedly deceptive acts are not alleged to have had any impact on other mortgage or home equity loans issued by Defendants or an impact the public at large.[23] As further amendments to the pleadings in this regard would be futile, Plaintiff's DPA claim is DISMISSED WITH PREJUDICE.[24] See Cuoco, 222 F.3d at 112.

## D.     Common Law Claims

In addition to her RESPA, TILA, and DPA claims, Plaintiff also alleges various common law causes of action, including fraud, civil conspiracy to commit fraud, breach of contract,

---

[22] Though the Amended Complaints include no allegations to this effect, in opposing the instant motion Gorbaty insists that Wells Fargo has "directed" similar violations at "thousands of customers." (Pl. Opp'n at 16.) To support this assertion, she appends various press reports, press releases, and other materials that discuss several lawsuits and litigation settlements relating to Wells Fargo's mortgage business. (Id., Exs. A-H.) Yet none of the documents appended to Plaintiff's opposition, or the matters described therein, relate to the types of deceptive acts alleged in this suit. (See id.) Gorbaty's conclusory assertions in her opposition papers are thus wholly insufficient to state a claim under § 349.

[23] See Silverman, 2013 WL 4039381, at *2-3 (dismissing § 349 claim alleging mortgage fraud); McLean-Laprade v. HSBC, No. 12-CV-1774 (LEK), 2013 WL 3930565, at *6 (N.D.N.Y. July 30, 2013) (dismissing § 349 claim alleging failure to make appropriate disclosures concerning mortgage and inappropriate servicing of loan); Canario, 300 A.D.2d at 334 (dismissing § 349 claim related to a "single real estate transaction"); Choi v. Kor. First Bank of New York, 244 A.D.2d 236, 237 (1st Dep't 1997) (dismissing § 349 claim predicated on alleged unilateral alteration of a mortgage loan); see also Sheehy v. New Century Mortg. Corp., 690 F. Supp. 2d 51, 74-75 (E.D.N.Y. 2010) (noting that "when courts have found § 349 applicable in the context of real estate transactions, they have usually done so where defendant published advertisements or otherwise solicited the general public," and that plaintiff's claim that she was misled to participate in a real estate transaction was not consumer-oriented and was therefore dismissed).

[24] In her opposition to the instant motion, Plaintiff purports to supplement her Amended Complaints by asserting a similar claim under New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, et seq. To the extent Plaintiff again seeks to amend her pleadings to add new causes of action, she must do so in accordance with Federal Rule of Civil Procedure 15 by seeking leave of court or by obtaining Wells Fargo's written consent. See Fed. R. Civ. P. 15(a)(2). However, Plaintiff is strongly cautioned that the court will not look favorably on an attempt to allege yet another non-meritorious claim. She should carefully consider the conclusions of the court set forth in this Memorandum and Order before proceeding with any motion under Rule 15.

breach of the covenant of good faith and fair dealing, and intentional infliction of emotional distress. These claims are addressed in turn.

1.    Choice of Law

Though not briefed by the parties, the court finds it necessary to determine whether the substantive law of New York or New Jersey governs its consideration of Plaintiff's common law claims.[25] Because the court is exercising its supplemental jurisdiction to entertain Plaintiff's state law claims (see, e.g., Equity Am. Compl. ¶ 3), it applies the choice of law principles of the state in which it sits—*i.e.*, New York. See N. Atlantic Instruments, Inv. v. Haber, 188 F.3d 38, 43 (2d Cir. 1999). New York's choice of law rules depend upon the nature of the underlying action. See Babcock v. Jackson, 12 N.Y.2d 473 (1963).

With respect to Plaintiff's tort claims, "[i]n New York, 'the relevant analytical approach to choice of law in tort actions' is the 'interest analysis.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1539 n.5 (2d Cir. 1997) (quoting Schultz v. Boy Scouts of Am., Inc., 65 N.Y.2d 189, 197 (1985)); see also White Plains Coat & Apron Co., Inc. v. Cintas Corp., 460 F.3d 281, 284 (2d Cir. 2006). Under the interest analysis, "the law of the jurisdiction having the greatest interest in the litigation will be applied." Lazard Freres, 108 F.3d at 1539 n.5 (quoting Schultz, 65 N.Y.2d at 197); see also GlobalNet Financial.com, Inc. v. Frank Crystal & Co., Inc., 449 F.3d 377, 384 (2d Cir. 2006). "If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the

---

[25] Plaintiff's Amended Complaints variously discuss the substantive law of both New York and New Jersey. (See, e.g., Equity Am. Compl. ¶ 135 (citing both states' law in alleging breach of contract), 139 (citing New York law in alleging intentional infliction of emotional distress); Pl. Opp'n at 16-17, 23-24.) Wells Fargo similarly cites to either New York or New Jersey law depending on the claim under discussion. (See Mot. to Dismiss at 16-21.) The court took no position on the choice of law issue in its prior Order (MTD Op. at 36 n.27). In its consideration of Gorbaty's supplemented pleadings, however, the court has encountered conflicts between these two bodies of law that necessitate a determination as to which state's law governs Plaintiff's common law claims, see Bass v. World Wrestling Fed'n Entm't, Inc., 129 F. Supp. 2d 491, 503-04 (E.D.N.Y. 2001) (noting choice of law analysis is only necessary when "an actual conflict exists between the jurisdictions").

greatest interest in regulating behavior within its borders." White Plains Coat & Apron, 460 F.3d at 284 (quoting Cooney v. Osgood Machinery, Inc., 81 N.Y.2d 66, 72 (1993)).

Here, nearly all events giving rise to Plaintiff's claims occurred in New Jersey: Gorbaty and her husband are New Jersey residents and were the same at the time the action was filed, the loan agreements were effectuated at a closing in New Jersey, the real property purchased by Plaintiff with the loan proceeds is located in New Jersey, the mortgages securing both loans were recorded with the Union County Clerk's office in New Jersey, and any damages flowing from these transactions were suffered in New Jersey. (See, e.g., Equity Am. Compl. ¶¶ 1, 8, Ex. A; id. ¶¶ 5, 45, 56, 81 (discussing modification of Equity Loan); Estes Decl., Ex. B (mortgage securing Mortgage Loan) (Dkt. 59-3) at 1.) Indeed, New York's only interest in the substance of this case is that Plaintiff was a resident at the time she applied for the loans and was allegedly provided some of the loan documents in New York prior to the closing. (See, e.g., Equity Am. Compl. ¶¶ 8, 81.) As such, New Jersey appears to have a greater interest in regulating the conduct at issue, and the court accordingly will apply that state's substantive law to Plaintiff's fraud and intentional infliction of emotional distress claims. See Lee v. E*Trade Fin. Corp., No. 12-CV-6543 (PAE), 2013 WL 4016220, at *6 n.9 (S.D.N.Y. Aug. 6, 2013) (applying New Jersey law in mortgage fraud suit where plaintiff is located in New York and all other relevant events occurred in New Jersey, where the property was located).

With regard to Plaintiff's contract claims, New York choice of law principles require the court to evaluate the "'center of gravity' or 'grouping of contacts,' with the purpose of establishing which state has 'the most significant relationship to the transaction and the parties.'" Fieger v. Pitney Bowes Credit Corp., 251 F.3d 386, 395 (2d Cir. 2001) (quoting Zurich Ins. Co. v. Shearson Lehman Hutton, Inc., 84 N.Y.2d 309 (1994)). In addition to considering the "place

of contracting" (*i.e.*, New Jersey), the court considers several factors in determining which state has the most significant relationship, including "the places of negotiation and performance; the location of the subject matter; and the domicile or places of business of the contracting parties." Zurich Ins., 84 N.Y.2d at 317-18. For the reasons discussed above, the court finds that New Jersey has the more enduring and central relationship to the transactions at issue in this case.[26]

Accordingly, for the purposes of considering Gorbaty's common law tort and contract claims, the court applies the substantive law of New Jersey.

### 2.    Fraud & Conspiracy to Commit Fraud

In addition to supplementing her allegations concerning the previously dismissed fraud claim on the Equity Loan, Gorbaty also alleges a new state law fraud claim concerning the Mortgage Loan. (Equity Am. Compl. ¶¶ 85-88; Mortg. Am. Compl. ¶¶ 82-85.) For the reasons discussed below, both claims are dismissed. Additionally, to the extent Plaintiff attempts to replead her civil conspiracy claim concerning the Equity Loan as a separate cause of action, that claim was dismissed with prejudice and may not be repled. (MTD Op. at 42-44.)

### a.    *Equity Loan*

Plaintiff's realleged fraud claim regarding the Equity Loan centers on her assertion that Wells Fargo "fraudulently, intentionally, and knowingly induced [her] to enter into the subject mortgage transaction" by failing to disclose "the true terms of the loan." (Equity Am. Compl. ¶ 86.) Specifically, Gorbaty alleges that Wells Fargo represented that the Equity Loan was a thirty-year instrument—requiring 359 monthly payments of $555.19 and one payment $555.10—

---

[26] Without relying on this language, the court merely notes that the mortgages submitted by Defendants that purport to secure Plaintiffs' Mortgage and Equity Loans contain choice-of-law provisions that provide that "[t]his Security Instrument shall be governed by . . . the law of the jurisdiction in which the Property is located"—*i.e.*, New Jersey. (See, e.g., Estes Decl., Ex. B at ¶ 16.) As previously discussed, however, because Plaintiff contests the authenticity of these documents the court does not consider them in connection with this Memorandum and Order. The mortgages' authenticity, and accordingly the effect of their choice-of-law clauses, will be determined at a later stage of this litigation.

but sometime thereafter[27] changed the terms to require fifteen years of regular payments of $557.42 followed by a final balloon payment of $55,496.28. (Id.; see also id. ¶¶ 12, 20, 45, 53, 56.) The court previously dismissed this claim without prejudice, explaining that Gorbaty had failed to sufficiently allege how she was injured by the alleged misrepresentation.[28] (MTD Op. at 41-42.)

New Jersey law is clear that "a plaintiff does not have a cause of action for fraud against a defendant until the plaintiff actually suffers damages," as a resulting injury is an integral element to that cause of action. Maertin v. Armstrong World Indus., Inc., 241 F. Supp. 2d 434, 458 (D.N.J. 2002). Further, a plaintiff must adduce factual allegations showing that the purported misrepresentation was the cause of the damages suffered. See Gennari v. Weichert Co. Realtors, 691 A.2d 350, 368 (N.J. 1997) (noting that fraud requires proof of "resulting damages" linked to plaintiff's reliance on material misrepresentation); Fried v. Aftec, Inc., 587 A.2d 290, 298 (N.J. Super. Ct. App. Div. 1991) (noting with regard to plaintiff's counterclaim for fraud, "defendant must be prepared to prove that [plaintiff's] alleged fraud proximately caused its asserted losses").

This presents a particular challenge for Gorbaty, as the final balloon payment under the allegedly altered Equity Loan does not come due until August 2022. (See MTD Op. 41-42.) In dismissing her fraud claim the court concluded that Plaintiff had failed to adequately allege how her inability to make payments on the loan beginning in 2010, and the resulting danger of

---

[27] See infra at note 37 (discussing ambiguity in Amended Equity Complaint concerning the timing of the alleged change and whether the parties' original agreement was ever reduced to writing).

[28] Under New Jersey law, a plaintiff asserting a claim for common law fraud must allege: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Banco Popular N. Am. v. Gandi, 876 A.2d 253, 260 (N.J. 2005).

foreclosure, were caused by the receipt of a fifteen-year loan with a balloon payment rather than a thirty-year instrument. (Id.; see also Equity Am. Compl. ¶¶ 20, 86, Ex. H (TILDS-2).) The court instead observed that Gorbaty appeared to occupy the same position now as she allegedly would have under the thirty-year loan, and would remain so until the balloon payment came due in 2022. (MTD Op. at 42.) She was thus granted leave to amend her pleading in order to allege: "(1) how she has been damaged; and (2) how her injuries were caused specifically buy her *receipt of a fifteen-year loan rather than a thirty-year loan.*" (Id. (emphasis in original).)

Gorbaty has accordingly supplemented her pleadings with allegations that she was injured by Wells Fargo's efforts to change in the terms of her Equity Loan because: (1) she made three years of "wasted" payments on the Equity Loan; (2) she was forced to incur the costs of bringing the instant litigation; (3) she lost equity in her home; and (4) because she suffered emotional damages and humiliation as a result of the fraud. (Equity Am. Compl. ¶ 87.) For the reasons set forth below, Plaintiff's efforts to supplement her common law fraud claims with regard to the Equity Loan are insufficient to survive the instant motion.

As a preliminary matter, Gorbaty's assertion that she "is at a loss of three years of payments on the loan" does not allege the existence of an injury resulting from Defendants' deceit. By Plaintiff's own admission, both loan structures required her to make effectively the same monthly payments over the first fifteen years of the loan.[29] The three years of "wasted payments" cited by Plaintiff, therefore, would have been made even if Wells Fargo had never

---

[29] Plaintiff does not assert a claim for damages based on the apparent $2.23 difference between the monthly payments under the fifteen-year structure and the monthly payments during the first fifteen years of the alleged thirty-year structure. Indeed, the Amended Equity Complaint does not allege whether Plaintiff paid monthly payments of $555.19 (under the thirty-year note) or $557.42 (under the fifteen-year note) during the three-year period during which she made regular payments on the Equity Loan. Gorbaty refers to her entire monthly payments as "wasted," not just the hypothetical excess amounts. (See Equity Am. Compl. ¶¶ 87, 90, 129.) Accordingly, the court declines to premise a finding of damages on the nominal difference between monthly payments due under the two loan structures alleged by Plaintiff, which indeed goes entirely unnoted in the Amended Equity Complaint.

changed the terms of the Equity Loan. These allegations thus do not amount to a cognizable injury, much less one resulting from any purported fraud committed by Defendants. (Id. ¶¶ 12, 20, 45, 53, 56, 86; see also id., Exs. A, H.) Likewise, costs incurred by Plaintiff in prosecuting this litigation cannot satisfy the damages element of her fraud claim without more;[30] otherwise, the "resulting damages" element of common law fraud effectively would be rendered a nullity for every plaintiff.[31] Gorbaty's assertion that she suffered "loss of equity in the house" also is unsupported by any factual allegations establishing such a loss or linking it to her receipt of a fifteen- rather than thirty-year loan. (Equity Am. Compl. ¶¶ 35, 87, 90, 129.) See supra Part III.A.1.a.i. Accordingly, even accepting the associated factual allegations as true, these three alleged injuries cannot establish a plausible entitlement to recover damages for Defendants' alleged fraud.

Having concluded that Plaintiff's theories of pecuniary harm are insufficiently alleged or otherwise inadequate to support her fraud claim, Gorbaty's remaining claim for damages is predicated on the "emotional distress and humiliation" she suffered as a result of Wells Fargo's purported fraud. (Id. ¶¶ 87, 105.) Unlike New York law, which generally rejects recovery of non-economic damages for emotional distress in fraud actions, see Kregos v. Associated Press, 3 F.3d 656, 665 (2d Cir. 1993), the law of New Jersey is less settled on this issue, see McConkey v. AON Corp., 804 A.2d 572, 592-96 (N.J. Super. Ct. App. Div. 2002). Indeed, as the Appellate

---

[30] New Jersey adheres to the American Rule, which provides that parties bear their own litigation costs "unless fee shifting is authorized by statute, court rule, or contract." DiMisa v. Acquaviva, 947 A.2d 168, 172-73 (N.J. Super. Ct. App. Div. 2008), aff'd 969 A.2d 1091 (N.J. 2009). Plaintiff does not allege that any such exception applies, and the court sees no grounds on the face of the amended pleadings that might warrant such an award of fees.

[31] See Barows v. Chase Manhattan Mortgage Corp., 465 F. Supp. 2d 347, 360 n.10 (D.N.J. 2006) (noting litigation costs "cannot constitute 'an injury'" for fraud claim); see also Hayden Capital USA, LLC v. Northstar Agri Indus., LLC, No. 11-CV-594 (DAB), 2012 WL 2953055, at *4 (S.D.N.Y. July 16, 2012) ("Damages attributable solely to the existence of litigation are clearly insufficient to sustain the necessary element of damages' in a fraud claim." (internal quotation marks, brackets, and citation omitted); In re Estate of Lash, 776 A.2d 765, 771 (N.J. 2001) ("New Jersey generally follows the American Rule, which prohibits a litigant from recovering counsel fees from a defendant when the fees were incurred in an action to establish that defendant's liability.").

Division noted in McConkey—one of the few appellate cases to even consider the issue—the

questions of whether emotional damages are recoverable for economic torts, including fraud,

deceit, and negligent misrepresentation, and the appropriate standard to be applied to such

demands have not been addressed by the Supreme Court of New Jersey.[32] 804 A.2d at 593

("Whether emotional damages are recoverable in such an action . . . is a question of first

impression under New Jersey law."); id. at 595 ("[I]t is not altogether clear that the Supreme

Court would even recognize emotional distress damages in an economic tort case."). Even if

New Jersey law were to recognize recovery for purely non-economic emotional damages in

fraud, however, the McConkey court observed that such claims would likely be subject to some

type of "threshold severity requirement." Id. at 595 (internal quotation marks and citation

omitted).[33]

The court agrees with this observation. Absent some type of severity threshold, a fraud

claim premised solely on emotional damages would effectively displace the tort of intentional

infliction of emotional distress. Holding plaintiffs to some type of "threshold severity

requirement" in a case such as this ensures that the heightened burden associated with intentional

infliction of emotional distress ("IIED") claims under New Jersey law cannot be evaded by

artfully pleading one's claim as sounding only in fraud. See McConkey, 804 A.2d at 595

(concurring in the observation that "'[i]t would be anomalous to relax the severity requirement in

economic torts where emotional distress is an unintended by-product of the wrong, while

---

[32] The New Jersey Supreme Court has, however, rejected recovery of emotional damages for litigation-induced distress. See Picogna v. Bd. of Educ. of Twp. of Cherry Hill, 671 A.2d 1035, 1039 (N.J. 1996) ("We hold, therefore, that plaintiff may not recover for litigation-induced distress as a separate component of damages."). To the extent Plaintiff's emotional damages theory is premised on "emotional strain" caused by this litigation, therefore, it is without merit under New Jersey law. (See, e.g., Equity Am. Compl. ¶¶ 87, 90, 105.)

[33] The appellate court in McConkey, however, applied a less demanding inquiry at the urging of the parties. Even under this lower threshold, the court upheld the trial court's decision to vacate plaintiff's emotional damages award, noting the "evidence [was] insufficient as a matter of law to support any emotional distress damages." 804 A.2d at 595.

maintaining it [IIED] cases where such emotional distress is the only element of damage'"

(citation omitted)); Aly v. Garcia, 754 A.2d 1232, 1235-37 (N.J. Super. Ct. App. Div. 2000)

(imposing IIED requirements on harassment claim asserting only emotional damages because "to

hold otherwise would provide an all-too-convenient vehicle to circumvent the clear guidelines"

governing IIED claims.); see also Buckley v. Trenton Saving Fund. Soc'y, 544 A.2d 857, 864

(N.J. 1988) (requiring that emotional distress for an IIED claim "must be 'so severe that no

reasonable man could be expected to endure it'"). Because the court finds that Gorbaty has

failed to adduce factual allegations showing that her alleged emotional distress was sufficiently

severe, see infra Part III.D.5, her allegations of non-economic emotional distress, inconvenience,

and anxiety are insufficient to support her common law fraud claim.[34]

As further amendments to the pleadings on this claim would be futile, Plaintiff's common

law fraud claim concerning the Equity Loan is DISMISSED WITH PREJUDICE. See Cuoco,

222 F.3d at 112.

> b. *Mortgage Loan Claim*

Gorbaty has also added a new fraud claim concerning the Mortgage Loan. Though by no

means clear, the Amended Mortgage Complaint appears to allege that Wells Fargo fraudulently

induced Plaintiff into entering the Mortgage Loan by failing to provide a TILDS at closing that

disclosed certain fees that were "unearned fees and illegal kickbacks." (Mortg. Am. Compl. ¶¶

82-85.) Specifically, for the purposes of her fraud claim Plaintiff cites to charges by Wells Fargo

for "loan discount fees" in the amounts of $2,760 and $276. (Id. ¶¶ 10, 82-85.) Plaintiff's

allegations of fraud concerning the Mortgage Loan are insufficient to state a plausible claim for

an array reasons, two of which are discussed below.

---

[34] The court also notes, to the extent it is probative, that New Jersey's Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1 et seq., does not provide for recovery of emotional damages. See Hutchinson, 410 F. Supp. 2d at 376.

As a preliminary matter, Gorbaty has made no attempt to allege fraudulent intent on the part of Wells Fargo, whether directly or through circumstantial evidence.[35] In alleging a cause of action for fraud, a plaintiff must allege facts "that give rise to a strong inference of fraudulent intent . . . either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994). Yet aside from labeling these charges as "unearned fees and illegal kickbacks," Gorbaty does not ascribe any fraudulent motive to Wells Fargo. She includes no allegations, factual or otherwise, suggesting *why* Defendants would intentionally omit the loan discount fees from her closing materials, why Wells Fargo would make such payments to the mortgage broker in the first place, or what Wells Fargo is purported to have received in exchange from the broker. Additionally, to the extent Gorbaty alleges a claim for fraud in the inducement—*i.e.*, that Wells Fargo promised that it would reduce her interest rate and did not do so—she fails to allege that Defendants did not intend to fulfill such a promise at the time it was made. See Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1186 (3d Cir. 1993) (requiring that a plaintiff prove that "at the time the promise to perform was made, the promisor did not intend to fulfill the promise" (emphasis removed)). Thus, the amended pleading falls well short of pleading a factual basis to support "a strong inference of fraudulent intent." Shields, 25 F.3d 1128.

---

[35] As the court noted in its prior Order, with respect to the first two elements of fraud—a misrepresentation or omission of material fact that the defendant knew to be false—plaintiffs are required to meet the heightened specificity requirement of Federal Rule of Civil Procedure 9(b). See Camofi Master LDC v. Riptide Worldwide, Inc., No. 10-CV-4020 (RM), 2011 WL 1197659, at *6 (S.D.N.Y. Mar. 25, 2011); Fed. R. Civ. P. 9(b) ("In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). In accordance with this heightened standard, the Second Circuit has held that a complaint alleging fraud "must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993).

Second, as discussed in connection with Plaintiff's § 2607 claims, see supra at Part

III.A.2, Plaintiff has failed to sufficiently allege why the omission of the discount fees from the

closing materials constituted a "material misrepresentation of presently existing or past fact."[36]

Gandi, 876 A.2d at 260. The materiality of Wells Fargo's alleged omission hinges on whether

the loan discount fees are, in fact, impermissible referral fees or unearned fees by virtue of

Defendants' failure to reduce the interest rate on the Mortgage Loan. Yet, as discussed in

connection with the § 2607 claims, Gorbaty offers no factual allegations to support her assertion

that this is the case. See supra Part III.A.2. The Amended Mortgage Complaint includes no

allusions to an agreement among the parties to reduce the interest rate on the Mortgage Loan, nor

does it indicate what the interest rate on the Mortgage Loan actually was or to what rate

Defendants it should have been lowered. Absent such factual allegations, the court cannot

conclude that Plaintiff has satisfactorily alleged that the loan discount fees were material, much

less with particularity required by Federal Rule of Civil Procedure 9(b).

Having already afforded Plaintiff an opportunity to supplement her allegations

concerning the "unearned fees and illegal kickbacks" charged on the Mortgage Loan, the court

finds that further amendment of these allegations would be futile. Thus, Gorbaty's common law

fraud claim concerning the Mortgage Loan is DIMMISSED WITH PREJUDICE. See Cuoco, 222

F.3d at 112. (See also supra Part III.A.2 (dismissing Plaintiff's § 2607 claims with prejudice).)

---

[36] The court further notes that the $2,760 fee was, in fact, disclosed to Gorbaty by American Mortgage Company in the GFE she received shortly before the July 2007 closing. (Mortg. Am. Compl. ¶ 11 ("Mrs. Gorbaty was provided with [a GFE] before the closing . . . . show[ing] the following: loan discount of $2,760 . . . ."; id., Ex. D (GFE Statement).) Having been made aware of information that was purportedly omitted by Defendants, Gorbaty cannot now claim an actionable omission of those same material facts. See Barows v. Chase Manhattan Mortgage Corp., 465 F. Supp. 2d 347, 367 (D.N.J. 2006) ("'[A] false representation made to a person who knows it to be false is not in legal estimation a fraud.'" (citation omitted)).

3.    Breach of Contract

The Amended Complaints also include new claims alleging breach of contract with respect to the Mortgage and Equity Loan agreements. (Mortg. Am. Compl. ¶¶ 86-90; Equity Am. Compl. ¶¶ 133-137.) Under New Jersey law a plaintiff asserting breach of contract "must prove that there is (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." Ayala v. Assured Lending Corp., 804 F. Supp. 2d 273, 279 (D.N.J. 2011) (citing Federico v. Home Depot, 507 F.2d 188, 203 (3d Cir. 2007)). For the reasons set forth below, Plaintiff's breach of contract claims are dismissed.

a.    *Mortgage Loan*

Plaintiff first alleges that Wells Fargo breached the material terms of her Mortgage Loan agreement by (1) not lowering her interest rate despite charging "loan discount fees" and (2) charging her a $999 application fee despite her agreement with the mortgage broker not pay such a fee. (Mortg. Am. Compl. ¶¶ 87, 89.) She further alleges that Defendants concealed that breach for three years, presumably dating from the execution of the agreement in July 2007. (Id. ¶ 89.) Defendants urge the court to dismiss the claim because Plaintiff fails to describe or otherwise allege the existence of a clause in the relevant agreement that has been breached by Wells Fargo's conduct. (Mot. to Dismiss at 16.) The court agrees.

Though not required to plead her claim with particularity, Plaintiff has not alleged the existence of a clause or provision in her mortgage loan agreement by which Wells Fargo agreed to reduce her interest rate beyond its current rate. This is fatal to her claim. See Iwanicki v. Bay State Mill. Co., No. 11-CV-1792 (CCC), 2011 WL 6131956, at *3 (D.N.J. Dec. 7, 2011) (under New Jersey law, a "plaintiff must also specifically identify the portions of the contract that were

allegedly breached"); Skypala v. Mortg. Elecr. Registration Sys., Inc., 655 F. Supp. 2d 451, 459 (D.N.J. 2009) (dismissing breach of contract claim where "the Complaint does not identify the provisions Plaintiff asserts were breached"). Even if such an agreement were alleged, the court has repeatedly found that Gorbaty's Amended Mortgage Complaint lacks the factual allegations necessary to state a plausible claim for relief predicated on her payment of the loan discount fees. See supra Part III.A.2, III.D.2.b. Nor does Gorbaty's reference to her side agreement with American Mortgage Company, the mortgage broker, suffice to state a claim for breach of her mortgage loan agreement with Wells Fargo absent any allegation that Wells Fargo knew of this arrangement or itself had agreed not to charge the $999 application fee. (See Mortg. Am. Compl. ¶¶ 16, 35, 89 (noting, among other things, that "Plaintiff agreed with mortgage broker from the beginning not to be charged application fee").)

Based on its understanding of Plaintiff's breach of contract claim regarding the Mortgage Loan, the court believes that any amendment on this claim would be futile. Accordingly, Plaintiff's breach of contract claim for the Mortgage Loan is DIMISSED WITH PREJUDICE. See Cuoco, 222 F.3d at 112. (See also supra Parts III.A.2, III.D.2.b (dismissing § 2607 and common law fraud claims based on same loan discount and application fees).)

b.    *Equity Loan*

Plaintiff's breach of contract action concerning the Equity Loan, which is predicated on the allegation that "Defendant[s] breached the contract by changing the agreed upon terms behind Plaintiff's back," is similarly deficient. (Equity Am. Compl. ¶ 134.) As previously discussed, the court understands Plaintiff as alleging that Wells Fargo breached the parties' original Equity Loan contract by unilaterally altering its material terms,[37] converting it from a

---

[37] Plaintiff's allegations concerning the Equity Loan are often ambiguous and inconsistent. She does not clearly allege whether the parties' original agreement was ever reduced to writing or when the purported alteration to the

thirty-year instrument with roughly equal payments to a fifteen-year instrument with a final

balloon payment of $55,496.28. (Equity Am. Compl. ¶¶ 134, 136; see also id. ¶¶ 12-13, 45.)

Wells Fargo dismisses this claim as "plainly frivolous" and argues that the "written agreement

states the contract terms," presumably referring to the mortgage and note for the Equity Note

submitted with Defendants' last round of briefing.[38]  (Mot. to Dismiss at 16-17; Defs.' Reply

Mem. of Law (Dkt. 97) at 7-8.)  Because Plaintiff does not allege the existence of a material

breach of the loan agreement or resulting damages, her breach of contract claim concerning the

Equity Loan is dismissed.

---

loan terms occurred.  In alleging her breach of contract claim and breach of the implied covenant of good faith
claims, for instance, the Amended Equity Complaint alleges (as it must) that the parties had a formal agreement
for a thirty-year loan with terms similar to those contained in the TILDS #1 and GFE #1 that was modified by
Defendants sometime after it was formalized.  (See Am. Equity Compl. ¶¶ 20, 22, 53, 87, 134, 136 ("Defendant
breached the contract by materially changing the terms of the Equity Loan . . . ."); see also Pl. Opp'n at 10, 12-13,
18, 20.)  Elsewhere, however, Plaintiff's allegations implicitly suggest that the terms of her Equity Loan were
changed sometime after she received the TILDS #1 and GFE #1, but before the loan agreement was executed—
i.e., that she was induced into the fifteen-year loan by virtue of Defendants' fraud.  (See Am. Equity Compl. ¶¶
21, 45, 80, 86-87 ("It is apparent that Defendant fraudulently induced Plaintiff in obtaining Equity loan by false
loan terms."); see also Pl. Opp'n at 1, 12.)

To the extent Plaintiff's allegations allege fraudulent inducement, however, the court has already found they do
not state a claim for relief.  See supra Part III.D.2.a.  With regard to the contractual claims, despite the lack of
clarity in the Amended Equity Complaint, the court is satisfied for the purposes of the instant Rule 12(b)(6)
motion that Plaintiff has adequately alleged the existence of an agreement between herself and Wells Fargo with
terms similar to those outlined in the TILDS #1 and GFE #1, which was subject to an attempted modification
sometime after it was entered.  See Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) ("In
considering a motion to dismiss for failure to state a claim upon which relief can be granted, the court is to accept
as true all facts alleged in the complaint" and "draw all reasonable inferences in favor of the plaintiff").

[38] Wells Fargo also contends that the TILDS-1 cannot serve as the initial contract between itself and Gorbaty
because it expressly provides that it "IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND."
(Equity Am. Compl., Ex. A at 1.)  Yet, assuming the truth of Plaintiff's allegations, the court understands
Gorbaty's contractual claims as alleging that the TILDS-1 merely reflected the original terms agreed-upon by her
and Wells Fargo concerning the Equity Loan, not that the TILDS-1 itself is the operative agreement.  (See, e.g.,
id. ¶ 136 (alleging that Defendants "provid[ed] TILA with agreed terms at the closing").  As such, taking all
allegations as true at this stage of the litigation, the court does not find that the disclaimer contained in the TILDS-
1 document is fatal to Plaintiff's breach of contract claim.

Additionally, because Plaintiff expressly contests the authenticity of the mortgages and notes provided by Wells
Fargo in its last round of briefing, the court may not consider the extraneous "written agreements" cited by
Defendants in deciding the instant motion.  See supra Part III.B.2.  (See also Pl. Opp'n at 12-13 (stating that the
Equity Note is "still very much disputed"); Pl.'s Objections to R&R (Dkt. 80) at 6, 15-16, 28 (disputing
authenticity of mortgage and note for both the Mortgage and Equity Loans).)

By her claim that Defendants "chang[ed] the agreed upon terms behind [her] back," Gorbaty effectively accuses Wells Fargo unilaterally modifying the terms of the original Equity Loan agreement. (See Am. Equity Compl. ¶ 134; see also id. ¶¶ 20, 22, 53, 87, 134, 136 ("Defendant breached the contract by materially changing the terms of the Equity Loan . . . .").) Under New Jersey law, however, one party's unilateral attempt to modify a contract is not binding absent mutual assent by both parties to the proposed change and consideration exchanged therefor. See Cnty. of Morris v. Fauver, 707 A.2d 958, 967 (N.J. 1998) ("Unilateral statements or actions made after an agreement has been reached . . . clearly do not serve to modify the original terms of a contract, especially where the other party does not have knowledge of the changes, because knowledge and assent are essential to an effective modification."); see also McGrath v. Poppleton, 550 F. Supp. 2d 564, 571-72 (D.N.J. 2008) ("A proposed modification by one party to a contract must be accepted by the other to constitute mutual assent to modify." (citation omitted)). Thus, given the fact that Gorbaty remained unaware of the alleged change until 2010 and her assertion that she would not have agreed to the new terms, the Amended Equity Complaint does not allege an enforceable change to the contract, but rather an attempt at modification. Plaintiff does not point to any provision or clause in the original equity loan agreement that was breached by this purported attempt at unilateral modification, i.e., a clause requiring all modifications to be made in writing, with certain notice to the counterparty, etc. Absent such allegations, Plaintiff has failed to specify the portion of her equity loan agreement that was breached. See Iwanicki, 2011 WL 6131956, at *3.

Gorbaty's breach of contract claim concerning the Equity Loan also is deficient because it does not allege damages resulting from the breach. Similar to her claim for fraud, Plaintiff alleges that she was damaged by Wells Fargo's breach of the equity loan agreement because she

lost three years of payments on the loan, incurred the expense of litigation, lost equity in her house, and suffered emotional distress. (Equity Am. Compl. ¶ 136.) For all but the last type of alleged damages, the court relies on its prior determination that Plaintiff has not alleged cognizable harm flowing from her receipt of a fifteen-year loan rather than a thirty-year loan. See supra Part III.D.2.a.i.

While New Jersey law permits recovery for consequential emotional damages in breach of contract actions, such awards are "exceedingly rare." Granelli v. Chicago Title Ins. Co., No. 10-CV-2582 (JLL), 2012 WL 2072648, at *7-8 (D.N.J. June 8, 2012). Indeed, emotional distress damages are only available where "the breach of contract involves conduct that is both intentional and outrageous and proximately causes severe, foreseeable emotional distress." Picogna v. Bd. of Educ. of Twp. of Cherry Hill, 671 A.2d 1035, 1037 (N.J. 1996); Buckley, 544 A.2d at 364-65 ("Mental suffering caused by breach of contract is not generally allowed as a basis for compensation in contractual actions, but a breach provides a basis for recovery when it is wanton or reckless and the harm was foreseeable when the contract was made." (internal quotation marks and citations omitted)); Menorah Chapels At Millburn v. Needle, 899 A.2d 316, 325 (N.J. Super. Ct. App. Div. 2006). Here, Plaintiff's pleading plainly fails to allege intentional conduct on the part of Wells Fargo that so "outrageous" as to warrant an award for consequential emotional damages.[39] Nor, for that matter, do Plaintiff's allegations suffice to show that the distress suffered as a result of the breach was either foreseeable at the time the agreement was

---

[39] See Thomas v. Ne. Univ., No. 11-CV-3905, 2011 WL 3205301 (D.N.J. July 27, 2011) (requiring conduct to be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" (citation omitted)), aff'd, 457 F. App'x 83 (3d Cir. 2012); Buckley, 544 A.2d at 364-65 (noting emotional damages requires a breach that is "wanton or reckless" (internal quotation marks and citation omitted)); see also Fiore v. Sears, Roebuck & Co., 364 A.2d 572, 574 (N.J. Law Div. 1976) (rejecting consequential emotional damages claim where plaintiff's claim "is nothing more or less than the normal breach of contract situation").

executed[40] or sufficiently severe as to warrant an award of consequential emotional damages.[41]

Accordingly, as the court believes it would be futile to permit Plaintiff to attempt to cure these pleading deficiencies, the breach of contract claim regarding the Equity Loan is DISMISSED WITH PREJUDICE. See Cuoco, 222 F.3d at 112.

### 4. Breach of the Implied Covenant of Good Faith and Fair Dealing

Gorbaty also realleges her claim for breach of the implied covenant of good faith and fair dealing with regard to the Mortgage Loan, which was previously dismissed by the court without prejudice, and adds a similar claim relating to the Equity Loan. (Mortg. Am. Compl. ¶¶ 76-81; Equity Am. Compl. ¶¶ 127-132.) Specifically, Plaintiff alleges that Wells Fargo breached the implied covenant in her loan agreements by not: (1) reducing the interest rate on the Mortgage Loan despite charging "loan discount fees" (Mortg. Am. Compl. ¶¶ 78-79); (2) modifying her loans or appropriately considering her requests for modification pursuant to Defendants' "traditional in-house modification" program (id. ¶¶ 78-80; Equity Am. Compl. ¶¶ 129-131); and (3) properly servicing her loans (id. ¶¶ 129-13; Mortg. Am. Compl. ¶¶ 78-79). For the reasons set forth below, Defendants' motion to dismiss Plaintiff's claims asserting breach of the implied covenant of good faith and fair dealing is granted in part and denied in part.

Under New Jersey law, a covenant of good faith and fair dealing is implied into every contract. See Sons of Thunder, Inc. v. Borden, Inc., 690 A.2d 575, 587 (N.J. 1997). Though

---

[40] An award of consequential emotional damages in contract requires "the foreseeability at the time the contract was made that such damage will arise from the breach of contract." Needle, 899 A.2d at 325. This requirement is echoed in the Restatement (Second) of Contracts, which recognizes emotional damages are only available in cases involving bodily injury or where the "contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result." Restatement (Second) of Contracts § 353 cmt. (1981) (noting breach of contract is particularly likely to cause serious emotional distress where the contracts at issue deal with "carriers and innkeepers with passengers and guests, contracts for the carriage or proper disposition of dead bodies, and contracts for the delivery of messages concerning death."). Based on the nature of the Equity Loan agreement, Plaintiff has not plausibly alleged that emotional distress and mental anguish were foreseeable consequences of the lender's breach.

[41] See infra Part III.D.5 (considering the severity of Plaintiff's emotional distress and finding it not to be severe).

there is no universally recognized set of elements for this claim, "a plaintiff must generally prove '(1) the defendant acted in bad faith or with a malicious motive, (2) to deny the plaintiff some benefit of the bargain originally intended by the parties.'" Zacks v. NetJets Inc., No. 11-CV-2537 (AET), 2011 WL 4387147, at *4 (D.N.J. Sept. 20, 2011) (citation and internal brackets omitted). Put another way, when alleging a breach of the covenant, the plaintiff bears the burden of showing "that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties." Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 864 A.2d 387, 396 (N.J. 2005) (internal quotation marks and citation omitted); see also id. (noting the covenant requires parties to "refrain from doing 'anything which will have the effect of destroying or injuring the right of the other party to receive' the benefits of the contract." (citation omitted)).

First, the court finds that Plaintiff's claim for breach of the implied covenant premised on Defendants' alleged failure to reduce the interest rate on the Mortgage Loan (Mortg. Am. Compl. ¶ 78) does not state a plausible claim for relief for the reasons previously discussed. See supra Parts III.A.2, III.D.2.b, III.D.3.a.

Next, Plaintiff's claims related to Defendants' failure to properly consider her loan modification requests also are insufficient to state a claim for relief. (Mortg. Am. Compl. ¶¶ 78-80; Equity Am. Compl. ¶¶ 129-130.) Beginning in July 2009, Gorbaty and her husband unsuccessfully applied on several occasions for loan modification under HAMP based on claimed financial hardship. Plaintiff now alleges that Defendants failed to advise her that all HAMP modification requests were additionally evaluated under Defendant's "traditional in-house loan modification review," improperly processed her applications under this program, and failed to notify her of the result of those reviews. (Mortg. Am. Compl. ¶¶ 22-26; Equity Am.

Compl. ¶ 33.) At the outset, Plaintiff offers only conclusory declarations that Wells Fargo had an "in-house loan modification" program and/or a policy by which all applications made under HAMP were also considered under such a program. (Mortg. Am. Compl. ¶¶ 22, 78; Equity Am. Compl. ¶¶ 33, 129.) She provides no allegations describing the contours of this program, the criteria required for modification, or any concrete basis for her assertion that her modification requests were, in fact, considered under this "traditional" review. For these reasons alone the claim fails. See Iqbal, 556 U.S. at 681 (holding that conclusory allegations are not entitled to the presumption of truth).

Even if such a program did exist and Gorbaty's loans were considered for "traditional" modification, the Amended Complaints do not plausibly allege that Defendants' conduct deprived Plaintiff of the "benefit of the bargain originally intended by the parties." Brunswick, 864 A.2d at 396 (noting that duty is breached where plaintiff's "reasonable expectations are destroyed" by defendant's bad faith conduct). To the contrary, the result of Wells Fargo's purported refusals to modify Plaintiff's loans under its "traditional" program (or its failure to keep Plaintiff properly apprised of its processing of her modification requests under that program) was to hold Gorbaty to the original terms of the parties' bargain. Because Wells Fargo's obligation to deal fairly and in good faith did not require that it modify the existing loan contracts at Plaintiff's request,[42] her claim for breach of the implied covenant cannot survive dismissal.

---

[42] See Woods Corporate Assocs. v. Signet Star Holdings, Inc., 910 F. Supp. 1019, 1034 (D.N.J. 1995) ("[A] creditor's clear duty to act in good faith does not encompass 'compromising its contractual rights in order to aid its debtor.'" (quoting Glenfed Fin. Corp. v. Penick Corp., 647 A.2d 852 (N.J. Super. Ct. App. Div. 1994)); Rodin Properties-Shore Mall, N.V. v. Cushman & Wakefield of Pennsylvania, Inc., 49 F. Supp. 2d 728, 735 (D.N.J. 1999) (noting "the duty to act in good faith and deal fairly cannot force a party to a contract to act in a manner the contract does not require").

Finally, Plaintiff alleges breach of the implied covenant based upon Defendants' failure to properly service her loans. (Mortg. Am. Compl. ¶ 78; Equity Am. Compl. ¶ 129.) The court dismissed a similar claim in its prior Order as impermissibly "vague and conclusory" and granted Plaintiff leave to supplement her claim with allegations of the "specific actions on the part of Wells Fargo resulting in a failure to properly service her loan." (MTD Op. at 36-37.) Gorbaty attempts to satisfy this directive by repackaging her allegations that Wells Fargo failed to provide her with certain disclosures at the closing, charged her for "unearned fees and illegal kickbacks," and did not respond to her QWRs as required by RESPA. (Mortg. Am. Compl. ¶ 78.) This effort, however, is inadequate to survive the instant motion. As previously discussed, Plaintiff's contentions relating to inconsistent or absent pre-closing disclosures relate to the origination or modification of her loans, not their servicing. See supra Part III.A.1.a.ii; see also supra Parts III.A.2, III.D.2.b, III.D.3.a (dismissing claims relating to "unearned fees and illegal kickbacks" as insufficiently pled). Additionally, Plaintiff has not adduced any allegations, direct or indirect, that Defendants acted in bad faith or with ill motive in connection with any of the purported servicing failures underlying this claim. See supra Part III.D.2.b (dismissing fraud claim in part for failure to allege fraudulent intent). This too is fatal to Plaintiff's bad faith claim on the Mortgage Loan.

Gorbaty has, however, alleged a plausible claim for relief with regard to the Equity Loan. (Equity Am. Compl. ¶ 78.) Taking as true Plaintiff's allegation that Wells Fargo attempted to unilaterally alter the terms of the Equity Loan without Plaintiff's knowledge,[43] the court finds that the Amended Equity Complaint includes sufficient indicia of ill motive on the part of Wells Fargo to survive the instant motion. See supra 42-44 & n.37 (discussing Plaintiff's allegation

---

[43] Plaintiff's claim for breach of the implied covenant of good faith and fair dealing presupposes the existence of a valid contract for a thirty-year loan, as reflected in the TILDS #1 and GFE #1. See supra note 37 (discussing confusion in Plaintiff's allegations concerning the Equity Loan).

that Wells Fargo unilaterally modified her Equity Loan in light of relevant law). To wit,

Gorbaty's assertion that Defendants tried to convert her loan into a fifteen-year instrument with a

final balloon payment "behind Plaintiff's back" and without sufficient disclosure plausibly

alleges bad faith misconduct. (Id. ¶¶ 5, 134; see also MTD Op. at 21 (upholding Plaintiff's TILA

claim based on the "troubling discrepancies" in the disclosures received from Defendants).) It is

similarly plausible that Wells Fargo's purported attempt to unilaterally modify the terms of the

Equity Loan deprived Gorbaty of the benefit of her bargain. Assuming the veracity of Plaintiff's

allegations, as the court must for purposes of the instant motion, Defendants' conduct might

plausibly be viewed as injecting sufficient ambiguity and uncertainty into the parties' contractual

relationship to upset Gorbaty's reasonable expectations under what was intended to be a thirty-

year agreement.

    As the court has previously concluded, however, Plaintiff has not adequately alleged the

existence of any compensable pecuniary injury flowing from Defendants' conduct with regard to

the Equity Loan. See supra Part III.A.1.a.i, III.D.2.a, III.D.3.b (concluding Plaintiff has not

alleged existence of damages resulting from the attempted modification of the Equity Loan). As

such, Wells Fargo's motion to dismiss the bad faith claim related to the Equity Loan is granted to

the extent Plaintiff seeks monetary relief. Yet Plaintiff's accusations evince an ongoing dispute

between the parties concerning the true terms of the Equity Loan. As such, Wells Fargo's

motion is denied insofar as Plaintiff seeks declaratory and injunctive relief in order to clarify and

enforce the actual terms of the Equity Loan. (Equity Am. Compl. ¶ 132 (demanding equitable

and declaratory relief, in addition to monetary damages, for breach of implied covenant); id. at p.

30 (demanding declaratory relief, injunctive relief, and specific performance in addition to

monetary relief).) See Traveras v. Resorts Int'l Hotel, Inc., No. 07-CV-4555 (RMB), 2008 WL

4372791, at *6 (D.N.J. Sept. 19, 2008) (noting claim for breach of the implied covenant is "based in contract"); E. Penn Sanitation, Inc. v. Grinnell Haulers, Inc., 682 A.2d 1207, 1213-18 (N.J. Super. Ct. App. Div. 1996) (recognizing plaintiff's claim for breach of the implied covenant as a species of breach of contract claim); see also 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."); In re Envtl. Ins. Declaratory Judgment Actions, 693 A.2d 844, 850-53 (N.J. 1997) (discussing availability of declaratory relief in breach of contract actions under New Jersey law); Restatement (Second) of Contracts § 345 (listing types of relief available in contract actions, including declaratory and equitable relief); cf. Palisades Properties, Inc. v. Brunetti, 44 N.J. 117 (1965) (awarding declaratory and equitable relief for analogous breach of an implied covenant not to "take any affirmative action which would destroy the fruits" of the agreement at issue). At this stage of the litigation, the court cannot conclude as a matter of law that Plaintiff is not entitled to some form of declaratory or equitable remedy so as to settle any remaining dispute concerning the terms of her Equity Loan.

As such, because further amendment would be futile, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing concerning the Mortgage Loan is DISMISSED WITH PREJUDICE. The same claim concerning the Equity Loan is likewise DISMISSED insofar as it seeks compensatory monetary damages, but Defendants' motion is DENIED to the extent Plaintiff seeks declaratory or equitable relief.

### 5.    Intentional Infliction of Emotional Distress

Finally, Plaintiff alleges a new cause of action for intentional infliction of emotional distress ("IIED") based on Wells Fargo's alleged alteration of the Equity Loan. (Equity Am.

Compl. ¶¶ 138-141.) In order to state a claim for IIED, a plaintiff must sufficiently allege "intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." Buckley, 544 A.2d at 863 (1988); Taylor v. Metzger, 706 A.2d 685, 694 (N.J. 1998). However, the requirements of this cause of action are particularly difficult to satisfy. Courts require that the offending conduct be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Buckley, 544 A.2d at 863. Further, the emotional distress suffered by the plaintiff must "so severe that no reasonable man could be expected to endure it." Buckley, 544 A.2d at 863.

Here, Gorbaty alleges that Wells Fargo's attempt to convert her Equity Loan into a fifteen-year loan without sufficient disclosure resulted in emotional distress, frustration, humiliation, "loss of sleep, fear of losing home, depressing [sic], crying, emotional anxiety and stress." (Equity Am. Compl. ¶ 139; see also id. ¶¶ 87, 105, 129, 136.) Under New Jersey law, however, "complaints [that] amount to nothing more than aggravation, embarrassment, an unspecified number of headaches, and loss of sleep" do not amount to severe emotional distress at a matter of law. Buckley, 544 A.2d at 864-65; Friffin v. Tops Appliance City, Inc., 766 A.2d 292, 298 (N.J. Super. Ct. App. Div. 2001) ("[A] plaintiff must show a 'severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so . . . .'" (citation omitted)); Aly, 754 A.2d at 1236-37 ("It is not enough to establish that a party is acutely upset by reason of the incident. In order to be actionable, the claimed emotional distress must be sufficiently substantial to result in physical illness or serious psychological [condition]."). Nor does Gorbaty allege that she suffered mental anguish of such a degree that it interfered with her daily life in any way, as is generally required

for an IIED claim. See Onyiuke v. Cheap Tickets, Inc., No. 09-CV-891 (KSH), 2009 WL 5218064, at *4 (D.N.J. Dec. 31, 2009) (noting such allegations are required under New Jersey Law), aff'd, 435 F. App'x 137 (3d Cir. 2011); Buckley, 544 A.2d at 864-65; Lascurain v. City of Newark, 793 A.2d 731, 748-49 (N.J. Super. Ct. App. Div. 2002) (stating that for emotional distress to be sufficiently severe, "dramatic impact on [plaintiff's] every-day activities or on her ability to function daily" is required as a general rule). Accordingly, even if Gorbaty's unsubstantiated allegations of emotional distress were taken as true, the anxiety and humiliation they describe is insufficiently severe to support a claim for IIED.

With a fulsome understanding of Gorbaty's allegations against Wells Fargo and the nature and scope of the deceptions attributed to Defendants, the court is of the view that granting Plaintiff leave to amend her IIED claim would be futile. It is accordingly DISMISSED WITH PREJUDICE. See Cuoco, 222 F.3d at 112.

## IV. CONCLUSION

For the foregoing reasons, Wells Fargo's motion to dismiss is GRANTED in part and DENIED in part. Specifically, the court concludes as follows:

- Plaintiff's RESPA claims are DISMISSED WITH PREJUDICE except with regard to her claim pursuant to § 2605(e)(3) asserting actual damages flowing from Defendants' alleged reporting to the credit reporting agencies, which is DISMISSED WITHOUT PREJUDICE. Should Plaintiff wish to replead her § 2605(e)(3) claim, she must file a letter requesting a pre-motion conference pursuant to the court's Individual Rule of Practice III(A) within sixty (60) days of entry of this Memorandum and Order. Such letter shall indicate her intention to file a motion for leave to amend her pleadings pursuant to Federal Rule of Civil Procedure 15 and must set forth the information requested by the court in Part III.A.1.a.iii;

- Plaintiff's TILA claim relating to the Mortgage Loan is DISMISSED WITH PREJUDICE and Defendants' motion to dismiss again is DENIED with regard to Plaintiff's TILA claim relating to the Equity Loan;

- Plaintiff's DPA claims are DISMISSED WITH PREJUDICE;

- Plaintiff's common law fraud claims are DISMISSED WITH PREJUDICE;

- Plaintiff's breach of contract claims are DISMISSED WITH PREJUDICE;

- Plaintiff's claim for breach of the implied covenant of good faith and fair dealing relating to the Mortgage Loan is DISMISSED WITH PREJUDICE. The same claim regarding the Equity Loan is likewise DISMISSED insofar as it seeks damages, but Defendants' motion is DENIED to the extent Plaintiff seeks declaratory or equitable relief; and

- Plaintiff's civil conspiracy claims were previously DISMISSED WITH PREJUDICE.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
     September 11, 2014

NICHOLAS G. GARAUFIS
United States District Judge